# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **VICTORIA LOVETT, individually and on behalf of all others similarly situated,** : | **CASE NO. 1:24-cv-00590** |
| : | |
| : | **Judge Douglas R. Cole** |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **CONTINUED.COM, LLC,** : | |
| : | |
| **Defendant.** : | |
| : | |

## DEFENDANT CONTINUED.COM, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Continued.com, LLC ("Continued") moves to dismiss Plaintiff's Complaint under Federal Rule of Procedure 12(b)(6) for failure to state a claim on which relief may be granted. Plaintiff has not pleaded a viable claim under the Video Privacy Protection Act, 18 U.S.C. § 2710.

A supporting memorandum accompanies this motion.

Respectfully submitted,

*/s/ Beth A. Bryan*
Beth A. Bryan (0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 357-9617
bryan@taftlaw.com

*Counsel for Defendant Continued.com, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **VICTORIA LOVETT, individually and on behalf of all others similarly situated,** | : | **CASE NO. 1:24-cv-00590** |
| | : | |
| | : | **Judge Douglas R. Cole** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **CONTINUED.COM, LLC,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## DEFENDANT CONTINUED.COM, LLC's MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**INTRODUCTION AND SUMMARY**

This Complaint attempts to extend the Video Privacy Protection Act, 18 U.S.C. § 2710, far beyond its original scope. Congress enacted the VPPA in 1988 in response to a D.C. newspaper obtaining and releasing a list of VHS tapes rented by Judge Robert Bork. While Judge Bork's film selections may not have been particularly salacious, the incident spurred Congress to action.

The VPPA allows the "consumer" of a "video tape service provider" to bring a claim if the provider "knowingly" disclosed the consumer's "personally identifiable information." 18 U.S.C. § 2710(b)(1). A "video tape service provider" is a "person engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). And "personally identifiable information" is that "which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3).

Plaintiff's Complaint seeks to cash in on the statutory damages allowed by the VPPA by alleging, as have dozens of other plaintiffs across the country, that any website hosting video content is a "video tape service provider" under the VPPA and that a common marketing tool called the Meta Pixel violates the VPPA.

But Plaintiff's allegations are far removed from the VPPA's original scope. Plaintiff did not sue a video store that rented her VHS tapes or similar audio-visual materials–instead, she sued the operator of a website hosting educational videos. Nor does Plaintiff claim that the defendant disclosed a list identifying what videos she watched–only that it shared the fact she was a website subscriber with Facebook. These allegations are leagues away from the privacy violations the VPPA prohibited and do not state a claim for a violation of the VPPA.

Plaintiff's Complaint fails to state a ripe or viable claim against Continued on which relief may be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6). Since Plaintiff's claims are fatally deficient, the Court should dismiss the Complaint.

## MATERIAL FACTUAL BACKGROUND

### A. The Parties.

Plaintiff alleges that Continued "operates and maintains a family of Websites, where it sells subscriptions to access prerecorded video content on various topics such as Speech Pathology, Audiology, and Occupational Therapy." (Doc. 1, Compl. ¶ 14, at PageID 5–6.) Generally, licensed professionals use Continued's websites to satisfy their continuing education requirements. (Doc. 1, Compl. ¶ 47, at PageID 17.) Plaintiff does not suggest that users can access the websites' video content other than online, such as by requesting DVDs.

Plaintiff alleges that, around August 15, 2023, she registered and paid for a subscription for "video products and services offered on" SpeechPathology.com, one of the websites operated by Continued. (Doc. 1, Compl. ¶ 9, at PageID 4.) According to Plaintiff, she then "used her subscription" on SpeechPathology.com "to request and obtain pre-recorded videos." (Doc. 1, Compl. ¶ 10, at PageID 5.) Plaintiff does not claim that she used SpeechPathology.com to satisfy continuing education requirements—or even that she is a licensed speech pathologist.

### B. The Meta Pixel.

Plaintiff alleges that Continued uses the "Meta Pixel" on its websites. (Doc. 1, Compl. ¶¶ 2, 41, at PageID 2, 15.) According to Plaintiff, the Meta Pixel is a "unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta." (Doc. 1, Compl. ¶ 43, at PageID 15.) Meta, formerly known as Facebook, developed and owns the Pixel. (Doc. 1, Compl. ¶ 43, at PageID 15.)

Plaintiff alleges that Meta can identify a website's users, so long as they have a Facebook account, since the Pixel sends Meta users' Facebook ID number ("FID"). (Doc. 1, Compl. ¶ 44, at PageID 16.) According to Plaintiff, a FID is "a unique sequence of numbers linked to a specific Meta profile" that "identifies one and only one person." (Doc. 1, Compl. ¶ 3, at PageID 3.) Plaintiff alleges that Meta "monetizes" the information transmitted by the Meta Pixel "by selling advertisers the ability to serve highly targeted advertisements." (Doc. 1, Compl. ¶ 45, at PageID 16.)

### C. The Alleged Disclosures.

According to Plaintiff, Continued "intentionally programmed its websites . . . to include a Meta Pixel." (Doc. 1, Compl. ¶ 50, at PageID 18.) Continued allegedly knew "that [the Pixel] would transmit the subscription purchased by its consumers and the purchasers' unique identifiers (including FIDs)." (Doc. 1, Compl. ¶ 68, at PageID 23–24.) Plaintiff also alleges that, throughout this period, she "had a Meta account, a Meta profile, and an FID associated with such profile." (Doc. 1, Compl. ¶ 11, at PageID 5.) But Plaintiff does not specify whether her "Meta account" publicly displayed her name or other personal information (such as an email address).

Plaintiff alleges that, using the Meta Pixel, Continued "disclosed [her] Private Viewing Information (including her FID and her purchase of a subscription to [SpeechPathology.com]) to Meta." (Doc. 1, Compl. ¶ 13, at PageID 5.) Plaintiff claims that she "never consented, agreed, authorized, or otherwise permitted" Continued to make the alleged disclosures. (Doc. 1, Compl. ¶ 12, at PageID 5.) Plaintiff does not allege that Continued disclosed the title, or other identifying information, of any videos she watched on SpeechPathology.com.

### D. The Proposed Class.

Plaintiff seeks to represent a class consisting of all persons who, during the two years before her complaint, bought a subscription to watch videos on a website owned by Continued while keeping a Facebook account. (Doc. 1, Compl. ¶ 57, at PageID 20.)

3

## SUMMARY OF ARGUMENT

The Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint must be dismissed if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (internal quotation marks and citation omitted).

The VPPA prohibits a "video tape service provider" from "knowingly" disclosing to a third party the "personally identifiable information" of any "consumer." 18 U.S.C. § 2710(b). So to bring a VPPA claim, a plaintiff must plausibly allege facts supporting three elements. First, that the defendant is a "video tape service provider." Second, that the plaintiff is a "consumer" of the "video tape service provider." Third, that the defendant "knowingly disclose[d]" the plaintiff's "personally identifiable information" to a third party. Plaintiff has failed to plausibly allege facts making a VPPA claim.

First, Plaintiff does not plausibly allege that Continued is a "video tape service provider." Plaintiff alleges that Continued operates continuing-education websites that host digital video content. But the VPPA's plain text and history make clear that the statute does not regulate videos available exclusively online. Congress enacted the VPPA to protect the privacy of people who rented movie tapes from video stores—not to regulate the whole world wide web. The VPPA's

4

text makes this clear, covering only "prerecorded video cassette tapes" and "similar audio visual materials." Taken together, these terms encompass only physical objects containing video media–rather than ephemeral transmissions of video content, such as digital videos. Since Plaintiff failed to allege that Continued rents, sells, or delivers any physical objects containing audio-visual materials, she has not alleged that Continued is regulated by the VPPA. Allowing Plaintiff's suit to proceed would extend the VPPA's reach from video tape rentals to the whole Internet. The Court should refuse to expand the VPPA so radically beyond its original meaning.

Second, Plaintiff has failed to plausibly allege that Continued disclosed her "personally identifiable information" under the VPPA. Plaintiff alleges that Continued disclosed only two items to Facebook: (1) her purchase of a website subscription and (2) her FID. But a VPPA plaintiff must plausibly allege that the defendant's unauthorized disclosure connected her personally to specific videos she requested or obtained. The mere knowledge that Plaintiff subscribed to SpeechPathology.com does not link Plaintiff to any video she watched–or even confirm that she watched any videos at all.

Finally, Plaintiff has failed to plausibly allege that Continued disclosed "personally identifiable information" with the required mens rea: knowledge. Plaintiff claims that Continued knew, when it installed the Meta Pixel on its websites, that the Pixel would transmit subscribers' purchase of a subscription along with their FID. But to satisfy the VPPA's mens rea requirement, a plaintiff must show that a defendant knew the recipient could connect both user- and video-identifying information to reconstruct "personally identifiable information." Plaintiff did not plausibly allege that Continued knew that Meta would pair her Facebook ID with her SpeechPathology.com subscription to personally identify what specific videos she watched. So she cannot satisfy the VPPA's mens rea requirement.

5

**ARGUMENT**

I.    **Plaintiff Fails to State a VPPA Claim Because Continued Is Not a "Video Tape Service Provider."**

As a start, Plaintiff's complaint fails to plausibly allege that Continued is a "video tape service provider," which the VPPA defines as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

Nearly forty years after the VPPA's enactment, some courts have simply assumed that websites hosting exclusively digital video content are "video tape service providers," because they provide consumers with "audio visual materials." *See, e.g.*, *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022).[1] But this broad reading ignores both the VPPA's text and its history.

This Court has an obligation to interpret the VPPA in line with its ordinary meaning when enacted in 1988, rather than to match present-day expectations. *See Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) at 69 ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation."). Reading the phrase "audio visual materials" in isolation betrays the ordinary-meaning rule by ignoring the statutory context that informed its meaning in 1988. *See Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (L. Hand, J.) ("[T]he meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create.").

---

[1] Perhaps surprisingly, only a single court has expressly considered whether the VPPA may not apply to exclusively-digital video content. *See In re Hulu Priv. Litig.*, No. 11-3764, 2012 WL 3282960, at *6 (N.D. Cal. 2012) (finding that it does, "[g]iven Congress's concern with protecting consumers' privacy in an evolving technological world.").

So does Continued qualify as a "video tape service provider?" 18 U.S.C. § 2710(a)(4) ("[A]ny person engaged in the business … of rental, sale, or delivery of *prerecorded video cassette tapes* or *similar audio visual materials*.") (emphases added). The first part is easy. Continued does not rent, sell, or deliver "prerecorded video cassette tapes"—rectangular plastic cartridges that contain an audio-visual recording. Continued instead hosts digital video content on websites including SpeechPathology.com. (Doc. 1, Compl. ¶ 14, at PageID 5–6.)

But does Continued provide consumers with "audio visual materials" that are "similar" to "prerecorded video cassette tapes?" Dictionary definitions help clarify this phrase's ordinary meaning when Congress enacted the VPPA. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566–69 (2012). First, two things were "similar" when they had "the same substance or structure throughout." *Similar*, Oxford English Dictionary (2d ed. 1989). *See also Similar*, Black's Law Dictionary (5th ed. 1979) ("Nearly corresponding; resembling in many respects; somewhat like; having a general likeness."); *id.* (6th ed. 1990) (same). In turn, "materials" generally were things composed of physical matter. *Material*, The Random House College Dictionary (Rev. ed. 1988) ("The substance or substances of which a thing is made or composed"; alternatively, "Formed or consisting of matter; physical; corporeal").

Putting both definitions together reveals that only other physical objects containing audio-visual recordings are "*similar* audio visual *materials*" to "prerecorded video cassette tapes." Faced with this language, an ordinary person in 1988 would have listed only items like film reels and discs, physical objects performing the same function as "prerecorded video cassette tapes": allowing consumers to play a single, pre-recorded audiovisual recording.[2] To be sure, in 1988,

---

[2] If the Court is willing to consider such evidence, the VPPA's legislative history reinforces the text's plain meaning. The Senate Judiciary Committee's report listed three physical objects

7

online video streaming was still back in the future. But other non-physical audio-visual transmissions did exist, from pre-recorded TV programming to movie theater screenings. And an ordinary person would have concluded that the VPPA didn't cover those either. *See Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 925 (C.D. Cal. 2023) (finding that movie theaters are not "video tape service providers").

The contextual canon of *Noscitur a sociis* ("a word is known by the company it keeps") reinforces this reading. *Yates v. United States*, 574 U.S. 528, 543 (2015). This canon counsels interpreters "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)); *see also Reading Law* at 195 ("Associated words bear on one another's meaning."). Here, the canon suggests that "similar audio visual materials" is "appropriately read to refer, not to any" video content, including digital media, but "specifically to the subset" of "audio visual materials" that consumers can physically handle. *See Yates*, 574 U.S. at 544.

If the Court has any remaining doubts about the VPPA's scope, it should resolve them in Continued's favor. On the one hand, the VPPA is codified as a criminal statute with civil penalties,[3] so it must be construed strictly under the rule of lenity. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). On the other, the VPPA's title—"Wrongful disclosure of video tape rental or sale records,"

---

containing audio-visual recordings as examples of "similar audio visual materials": "laser discs, open-reel movies, [and] CDI technology." S. Rep. No. 100-599, at 12 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-10. The report also emphasized the VPPA's focus on entities distributing physical objects audio-visual recordings by describing the Act as prohibiting "*video stores* from disclosing 'personally identifiable information.'" *Id.* at 6, *as reprinted* in 1988 U.S.C.C.A.N. at 4342-7 (emphasis added).

[3] The VPPA is codified in Title 18 of the United States Code, which covers "Crimes and Criminal Procedure."

18 U.S.C. § 2710—may be instructive. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of the statute."). The title's exclusive focus on video tapes suggests the Act should not be read as an "all-encompassing" data privacy regulation extending to intangible transmissions of video content dissimilar from video cassette tapes. *Yates*, 574 U.S. at 540.

Applying the VPPA to the modern-day Internet is "akin to placing a square peg into a round hole." *Robinson v. Disney Online*, 152 F. Supp. 3d 175, 184 (S.D.N.Y. 2015) (cleaned up). Allowing claims like Plaintiff's would extend "the law to cover factual circumstances far removed from those that motivated its passage." *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016). This Court should refuse Plaintiff's invitation to do so, especially given the plain meaning of the VPPA's text.

Since Continued does not distribute "similar audio visual materials" to "prerecorded video cassette tapes," Plaintiff has failed to plausibly allege that Continued is a "video tape service provider" under the VPPA.[4]

---

[4] Plaintiff's failure to plausibly allege that Continued is a "video tape service provider" also dooms her claim she is a "consumer," which the VPPA defines as a "renter, purchaser, or subscriber of goods or services *from a video tape service provider*." 18 U.S.C. § 2710(a)(1) (emphasis added). Since Continued is not a "video tape service provider," Plaintiff cannot claim to have purchased goods or services from one. Furthermore, "a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of" prerecorded video cassettes or similar "audio-visual goods or services, and not goods or services as a whole." *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023). And, as explained above, the digital SpeechPathology.com subscription that Plaintiff bought is neither a "prerecorded video cassette tape" nor a "similar audio-visual material."

9

**II.     Plaintiff Fails to State a VPPA Claim Because She Does Not Allege Continued Disclosed Any of Her "Personally Identifiable Information."**

Plaintiff's Complaint also fails because it does not plausibly allege that Continued disclosed her "personally identifiable information" to Meta.

In Plaintiff's account, Continued disclosed her "personally identifiable information" by sharing two items with Meta: (1) Plaintiff's purchase of a SpeechPathology.com subscription and (2) her FID. (Doc. 1, Compl. ¶¶ 3, 67 at PageID 3, 23.) But even combined, these two items do not qualify as "personally identifiable information" under the VPPA.

The VPPA defines "personally identifiable information" as "information which identifies *a person* as having requested or obtained *specific* video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphases added). This definition "suggests that the information disclosed by a video tape service provider must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179. Although the Sixth Circuit has yet to weigh in, most Circuits have interpreted "personally identifiable information" along these lines to encompass only information that "readily permits an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)).

A video-tape service provider who does not share *either* a consumer's personal identity *or* her specific video-tape choices, has not disclosed any "personally identifiable information." For instance, Blockbuster would disclose no one's "personally identifiable information" by sharing a list of most-popular rentals, without naming any individual cinephile. Nor would it do so by disclosing that Robert Bork was an avid patron, without listing any specific tapes the eminent jurist rented.

10

Turning to the Complaint, first, does it plausibly assert that Continued identified Plaintiff personally? No. The Complaint does not allege that Continued shared Plaintiff's name with Meta, only that it shared her FID (which in turn linked to a Facebook account). (Doc. 1, Compl. ¶¶ 11, 13, 41, 49–52, at PageID 5, 15, 18–19.) The Complaint does not allege that this Facebook account contained any of Plaintiff's personal information, say her name or email address. (*See* Doc. 1, Compl. ¶¶ 8, 11, at PageID 4–5.) So under the facts alleged, this account could very well be under a pseudonym or be a "burner" account. So simply pleading that Plaintiff's FID was disclosed does not plausibly allege she was personally identified—absent an allegation that the FID linked to a Facebook page containing Plaintiff's personal information (such as her name or email address). *See, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Edwards v. Learfield Commc'ns*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023). *But see Feldman v. Star Trib. Media Co., LLC*, 659 F. Supp. 3d 1006, 1020–21 (D. Minn. 2023).

In any event, Plaintiff's claim that Continued disclosed her "personally identifiable information" fails for another reason: she does not allege that Continued's disclosure linked Plaintiff to **any** "specific" videos that she "requested or obtained." *See* 18 U.S.C. § 2710(a)(3). Plaintiff alleges that Continued disclosed her purchase of a SpeechPathology.com subscription. (Doc. 1, Compl. ¶¶ 3, 67 at PageID 3, 23.) But the mere disclosure that someone subscribes to a website hosting videos does not reveal whether the subscriber watched any videos on the website, much less any *specific* videos the subscriber watched. Knowing someone has a Netflix or Prime Video subscription does not reveal whether they used their account to watch *Barbie* or *Oppenheimer*, "Succession" or "Kitchen Nightmares."

Consider *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), another case involving the Meta Pixel. The plaintiff in *Martin* alleged that the Pixel, installed on the website

11

People.com, shared the name of webpages he accessed with Meta, linked to his FID. *Id.* at 284. The *Martin* court found that the plaintiff failed to allege that the defendant shared his "personally identifiable information" with Meta, since the alleged transmission did not identify the plaintiff "as having requested or obtained specific videos." *Id.* at 285. The court reasoned that "disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page." *Id.* at 284–85. The same goes for Plaintiff's allegations here: nothing in the Complaint suggests that mere knowledge of her subscription would "reveal the title of a[ny] video" on SpeechPathology.com, much less whether Plaintiff "requested or obtained [any] video." *Id.* at 284.[5]

Plaintiff's allegation that Continued disclosed her SpeechPathology.com subscription did not identify her "as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). As a result, Plaintiff failed to plausibly allege that Continued disclosed her "personally identifiable information."

---

[5] To be sure, one Circuit seems to have adopted a more expansive definition of "personally identifiable information." The First Circuit suggested that "personally identifiable information" extends to "information reasonably and foreseeably likely to reveal which . . . videos [the consumer] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (finding that an iPhone user's GPS coordinates and device identifier were "personally identifiable information"). This approach appears to expand the statutory definition of the term beyond its plain meaning, which is limited to disclosing "specific video materials." 18 U.S.C. § 2710(a)(3). But in any event, Plaintiff's Complaint fails even the First Circuit's test, since it includes no allegations suggesting that mere knowledge of her SpeechPathology.com subscription was "reasonably and foreseeably likely to reveal" any specific videos she watched on the website. *Yershov*, 820 F.3d at 486.

### III. Plaintiff Fails to State a VPPA Claim Because She Has Not Adequately Alleged That Any Disclosure Was "Knowing."

Even if Plaintiff did adequately allege that Continued disclosed her "personally identifiable information," she has not sufficiently alleged that Continued disclosed the information "knowingly."

As a criminal statute with civil penalties, the VPPA includes a mens rea requirement: a disclosure of "personally identifiable information" must be made "knowingly." 18 U.S.C. § 2710(b)(1). Plaintiff alleges that Continued "knew the Meta Pixel disclosed its subscribers' Private Viewing Information to Meta." (Doc. 1, Compl. ¶ 53, at PageID 19.) The Complaint elaborates later, claiming Continued intentionally installed the Meta Pixel on its websites "knowing that such code would transmit the subscription purchased by its consumers" along with their FID. (Doc. 1, Compl. ¶ 68, at PageID 23–24.)

But these allegations cannot satisfy the VPPA's mens rea requirement, even if the Complaint plausibly alleges a disclosure of "personally identifiable information." Plaintiff alleges only that Continued knew that the Pixel would inform Meta of Facebook users who subscribed to its websites, identified not by name but by their FID. (Doc. 1, Compl. ¶ 68, at PageID 23–24.) But she does not assert that Meta actually personally identified her and connected her to videos she watched—much less that Continued knew that this privacy violation would occur. Under the facts alleged by Plaintiff, Continued could reasonably believe it was transmitting anonymized information that Meta would use only for targeted advertising to Facebook users like Plaintiff.

Consider *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015), yet another Meta pixel case. The plaintiffs claimed that Hulu knowingly disclosed their "personally identifiable information" by using the Pixel to transmit their FIDs and watch-page information. *Id.* at 1097–98. But the court noted that the plaintiffs had to show that Hulu's knowledge covered "all three

13

VPPA elements: the user's identity; the identity of the videos; and the connection between them (that is, the fact that the consumer has 'requested or obtained' the listed videos)." *Id.* at 1098. Knowing disclosure of "user and video identification" (such as FIDs and watch-page addresses) was not enough, absent knowledge of the connection between both. *Id.* The plaintiffs had to "prove that Hulu knew that Facebook might combine those discrete things to reconstruct" their "personally-identifiable information." *Id.* at 1099.

Plaintiff claims that Continued knowingly disclosed her FID and SpeechPathology.com subscription. (Doc. 1, Compl. ¶ 68, at PageID 23–24.) But like the *Hulu* plaintiffs, Plaintiff does not claim that Continued knew Facebook would connect these two "discrete things" to identify her as having "requested or obtained" specific videos. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1098. So Plaintiff has failed to plausibly assert that Continued "knowingly" disclosed her "personally identifiable information."

## CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Respectfully submitted,

*/s/ Beth A. Bryan*
Beth A. Bryan (0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 357-9617
bryan@taftlaw.com

*Counsel for Defendant Continued.com, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above was filed electronically on November 27, 2024. Notice of this filing will be sent to all parties through the Court's electronic filing system.

*/s/ Beth A. Bryan*