UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| VICTORIA LOVETT, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br> v.<br><br>CONTINUED.COM, LLC,<br><br>     Defendant. | Case No. 1:24-cv-00590<br><br>**District Judge: Hon. Douglas R. Cole** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Victoria Lovett, by and through undersigned counsel, submits this response in opposition to Defendant's motion to dismiss, (Doc. 6, "Motion" or "Mot.")), filed by Defendant Continued.com, LLC. ("Defendant" or "Continued").

## **INTRODUCTION**

On October 16, 2024, Plaintiff commenced this class action against Defendant to redress the systematic, continuous, and routine violation of Ms. Lovett's and other consumers' privacy rights as established by the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA"). (Doc. 1, Compl.). Over the past two years, Defendant regularly disclosed its consumers' "personally identifiable information" to Meta Platforms, Inc. ("Meta"). *See* 18 U.S.C. § 2710(b)(1). The personally identifiable information disclosed to Meta includes both the consumers' Facebook IDs ("FIDs") alongside the specific "prerecorded video cassette tapes or similar audio visual materials" that each consumer requested or obtained from Defendant and the corresponding URLs where the "prerecorded video cassette tapes or similar audio visual materials" could be found online. *See* 18 U.S.C. § 2710(a)(3).

In the Motion, Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) on three separate grounds: (1) the Complaint fails to adequately allege that Defendant is a videotape service provider as defined in 18 U.S.C. § 2710(a)(4) (Doc. 6, Mot., at PageID 44-46); (2) the Complaint fails to adequately allege that Defendant disclosed her "personally identifiable information" to Meta. (*see id.* at PageID 48-50); and (3) the Complaint fails to adequately allege that Defendant "knowingly" disclosed her personally identifiable information to Meta. (*see id.* at PageID 51-52). Each of these arguments is baseless. Defendant's sales of prerecorded video products and services on its website plainly render it a "video tape service provider," and the Complaint alleges numerous well-pled factual allegations

1

demonstrating that Defendant knowingly disclosed Plaintiff's "personally identifiable information" to Meta.

The Complaint states a claim for violation of the VPPA, and the Motion should be denied.

## APPLICABLE LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). "Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff meets this standard by alleging "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Jones v. Ohio Dep't of Pub. Safety*, No. 2:22-CV-3692, 2024 WL 495529, at *4 (S.D. Ohio Feb. 7, 2024).

## ARGUMENT

To state a claim under the VPPA, a plaintiff must allege that "[a] video tape service provider . . . knowingly disclose[d], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710 (b)(1). Thus, a plaintiff states a VPPA claim by alleging facts plausibly showing that the following four elements are satisfied: (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable

2

information concerning [the plaintiff]" to "any person," (3) the defendant's disclosure of such information was made knowingly, and (4) such disclosure was not authorized by one of the exceptions found in section 2710(b)(2). *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). In the Motion, Defendant contends that the factual allegations of the Complaint fail to plausibly satisfy the first three elements.

### I. The Complaint Adequately Alleges Facts Demonstrating that Defendant is a "Video Tape Service Provider"

First, Defendant argues that the factual allegations of the Complaint fail to establish that Defendant is a "video tape service provider" within the meaning of the VPPA.

The VPPA defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes **or similar audio visual materials**[.]" 18 U.S.C. § 2710 (a)(4) (emphasis added).

Defendant argues that it is not a "video tape service provider" within the meaning of the VPPA because the prerecorded video materials and services it sells on its website do not qualify as "audio visual materials" that are "similar" to "prerecorded video cassette tapes." According to Defendant, only physical objects containing audiovisual recordings are materials "similar . . . to prerecorded video cassette tapes" within the meaning of the VPPA. (*See* Doc. 6, Mot. at PageID 45 ("[T]he contextual canon of *Noscitur a sociis* . . . suggests that 'similar audio visual materials' is 'appropriately read to refer, not to any' video content, including digital media, but 'specifically to the subset' of 'audio visual materials' that consumers can physically handle.")). The argument is nonsense.

When construing a statute, the "primary rule . . . is that a court will not look beyond the statutory text if the text is unambiguous." *Olden v. LaFarge Corp.*, 383 F.3d 495, 506 (6th Cir. 2004). Where, as here, "a word is not defined by statute, courts construe the undefined term in

3

accord with its ordinary or natural meaning. *See Ltd., Inc. v. Comm'r*, 286 F.3d 324, 333 (6th Cir. 2002). "To give the term its ordinary meaning, we utilize the 'normal tools of statutory interpretation,' and discern how '[the term] was commonly understood' at the time Congress used it[.]" *Keeley v. Whitaker*, 910 F.3d 878, 882 (6th Cir. 2018) (internal citations omitted). "Where, however, 'the language is ambiguous or leads to an absurd result,' courts may rely on extra-textual sources, such as legislative history or administrative guidance, to interpret a statute." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020). "Of course, if the statutory text and legislative history are consistent, this primary rule is unnecessary because the result will be the same regardless of whether a court follows the rule or not." *Olden v. LaFarge Corp.*, 383 F.3d at 506.

In this case, Defendant's argument that the statute only regulates providers of audio visual materials in the physical forms that existed in 1988 rests on an overly narrow reading of the phrase "similar audio visual materials." The statutory definition of "video tape service provider" includes providers of *any* "audio visual <u>materials</u>" that are "<u>similar</u>" to "prerecorded video cassette tapes" – without imposing any requirement that such materials be provided in physical, tangible form. The word "material" is defined "both as 'relating to substance' and as 'Text or images in printed or electronic form; also with distinguishing word, as *reading material, etc.*'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *5 (N.D. Cal. Aug. 10, 2012) (quoting Oxford English Dictionary, Third Edition, March 2001). And the word "similar" is defined as "[a]lmost the same, but not identical." *See Similar*, WEBSTER'S DICTIONARY 223 (digital archive 1988 ed.), available at https://archive.org/details/webstersdictiona0000unse_i9t3/. Thus, "similar audio visual materials" means any prerecorded audio visual material that is almost the same as, but not identical to, prerecorded video cassette tapes, including prerecorded audio visual content in digital form, regardless of the method of its delivery (on the internet or otherwise). *See e.g., In re Hulu Priv. Litig.*, 2012 WL 3282960, at *5 ("a plain reading of a statute that covers videotapes and 'similar

4

audio visual materials' is about the video content, not about how that content was delivered (e.g. via the Internet or a bricks-and-mortar store)"); *Louth v. NFL Enterprises LLC*, No. 1:21-CV-00405-MSM-PAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (explaining that the word "prerecorded" modifies both "video cassette tapes" and "similar audio visual materials" in the definition of "video tape service provider"); *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 926 (C.D. Cal. 2023) (recognizing that "courts have expanded the VPPA to cover businesses that allow consumers to stream video content directly into their home").

This conclusion is confirmed by the VPPA's legislative history. In response to a newspaper's publication of then-Supreme Court nominee Judge Robert H. Bork's video rental history, consisting of 146 films that Judge Bork and his family had rented from a video store, Congress enacted the VPPA "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials." *See* Pub. L. No. 100–618, preamble; S. Rep. No. 100–599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1. In 2012, Congress made certain amendments to the VPPA "to reflect the realities of the 21st century," 158 Cong. Rec. H6849–01 (Dec. 18, 2012). The 2012 amendment, however, left the definition of "videotape service provider" untouched – clearly demonstrating that Congress found the definition, as originally drafted in 1988, broad enough to continue to encompass providers of audio visual materials in the 21st century, including by bringing within its scope modern-day companies like Defendant that provides "prerecorded . . . audio visual materials" to consumers in digital mediums that did not even exist at the time of the statute's enactment in 1988. *See Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 548 n.4 (N.D. Ohio 2024); *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6 ("The question is whether the mechanism of delivery here—streaming versus bricks-and-mortar delivery—ends this case at the pleading stage . . . Given Congress's concern with protecting consumers' privacy in an evolving

technological world, the court rejects the argument."); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (surveying and collecting cases for the same proposition).

Indeed, "the Senate Report [concerning the VPPA] confirms that Congress was concerned with protecting the confidentiality of private information about viewing preferences regardless of the business model or media format involved." *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6 (citing S. Rep. No. 100–599 at 1 (VPPA follows a long line of statutes passed by Congress to extend privacy protections to records that contain information about individuals); *id.* at 3 (quoting Senator Leahy's denouncement of the disclosures: "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read.... In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch.... I think that is wrong, I think that is Big Brother, and I think it is something we have to guard against); *id.* at 2–4 (extensive discussion of privacy, including Supreme Court case law and noting that protecting an individual's choice of books and films is a pillar of intellectual freedom under the First Amendment).).[1]

In sum, both the plain language of the statute and the relevant legislative history confirm that "Congress used 'similar audio video materials' to ensure that [VPPA]'s protections would retain their force even as technologies evolve." *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6. Against this backdrop, the Complaint adequately alleges that Defendant – a company engaged in

---

[1] Thus, "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6 (quoting S. Rep. No. 100–599 at 12). "Considering both together does not suggest—as [Defendant] argues—an intent to limit the VPAA to tangible materials but—as Plaintiff[] argue[s]—instead suggests Congress's intent to cover new technologies for pre-recorded video content." *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6. "Indeed, the Senate Report discusses extensively the concept of privacy in an evolving technological world." *Id.*

the business of selling and delivering prerecorded video products and services to consumers on its website – is a "video tape service provider" as defined in the VPPA.

### II. The Complaint Adequately Alleges Defendant Disclosed Plaintiff's "Personally Identifiable Information" to Meta

Second, Defendant argues that the Complaint fails to adequately allege facts to plausibly suggest that Plaintiff's "Facebook account contained . . . Plaintiff's . . . name," such that Defendant disclosed "Plaintiff's name [to] Meta" by disclosing her FID to Meta, or that any such disclosure "linked Plaintiff to any 'specific' videos that she 'requested or obtained'" from Defendant's website. (Doc. 6, Mot. at PageID 49). The argument is without merit. The Complaint contains numerous factual allegations plausibly demonstrating that Plaintiff's Facebook account contained her full name (among many additional personal details), that Plaintiff's FID identifies Plaintiff by name (and other personal details), and that Defendant disclosed to Meta Plaintiff's FID along with information that identified her as having requested or obtained specific prerecorded video materials or services from Defendant.

Specifically, the Complaint alleges Defendant disclosed to Meta the Facebook IDs of Plaintiff and its subscribers and that its disclosure of those Facebook IDs was paired with the URLs that identified the specific prerecorded video products or services requested or obtained by Plaintiff and its other customers and where such products or services were obtained on Defendant's website. (Doc. 1, Compl., ¶¶ 3, 41, 52-56, at PageID 3, 15, 18-19). The Complaint further alleges all Facebook IDs, pertaining to all of Meta's subscribers (including Plaintiff), are personally identifying because every Meta subscriber has an FID, every Meta subscriber's FID (including Plaintiff's FID) is indexed to that subscriber's Meta account page, and that every subscriber's (including Plaintiff's) Meta account page reveals the subscriber's first and last name, birth date, gender, and phone number or email address. (*Id.*, ¶¶ 3, 44, at PageID 3, 16). The

7

Complaint also alleges that Defendant disclosed the fact that Plaintiff and its other customers purchased a subscription to prerecorded videos from several of Defendant's websites, which, by the domain name alone, identify the subject matter of the content (Speech Pathology, Occupational Therapy, Audiology, Physical Therapy) hosted on that site. (*Id.*, ¶¶ 1-3, 10-13, 41, 46, 49-56, 67, at PageID 2-3, 5, 15, 18-19, 23). These well-pled factual allegations, which must be accepted as true at this stage of the proceedings, adequately demonstrate that Defendant disclosed "information which identifies [Plaintiff] as having requested or obtained **specific video materials** or **services** from [Defendant]" to Meta. 18 U.S.C. § 2710(a)(1). *See also Jones v. City of Cincinnati*, 521 F.3d at 559 (courts must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."); *Jones v. Ohio Dep't of Pub. Safety*, 2024 WL 495529, at *4.

Indeed, numerous courts presiding over similar VPPA cases have concluded that a plaintiff's allegations that a defendant disclosed to Meta all of its customers' Facebook IDs, along with the URLs identifying or naming the prerecorded videos requested or obtained by each of them, adequately demonstrate actionable disclosures of "personally identifiable information" within the meaning of the VPPA. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) (holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable information); *Feldman*, 659 F. Supp. 3d at 1021 ("And most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions"); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in

8

connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (same), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015).

In nonetheless arguing that Plaintiff's allegations fail to plausibly demonstrate disclosures of "personally identifiable information" to Meta, Defendant cites two readily distinguishable decisions, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) and *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023). In both of those cases, the plaintiffs did not allege that any of the information disclosed by the defendants was connected to their Facebook accounts. *See e.g.*, 689 F. Supp. 3d at 720 ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses."). Here, the Complaint specifically alleges that "[t]o create a Meta account, a person must provide, inter alia, his or her first and last name, birth date, gender, and phone number or email address," and that "[a] Meta profile," to which one and only one Facebook FID corresponds, necessarily "identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." (Doc. 1, Compl., ¶¶ 3, 41, at PageID 3, 15). The Complaint further alleges that "[a]t all times relevant hereto, including when purchasing a subscription to Defendant's website and accessing and obtaining the prerecorded video material provided to subscribers on Defendant's website, Plaintiff had a Meta account, a Meta profile, and an FID associated with such profile." (*See id.*, ¶ 11, at PageID 5). These factual allegations plainly establish Defendant's disclosure of Plaintiff's "personally identifiable information" to Meta. *See, e.g., Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (finding complaint plausibly demonstrated disclosure of personally identifiable

9

information to Meta where the plaintiff alleged "a user's Facebook profile may contain the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts.").

Accordingly, this Court should follow the overwhelming majority of district courts and deny Defendant's motion on this ground alone. *See Golden*, 688 F. Supp. 3d at 159.

### III. The Complaint Adequately Alleges that Defendant Knowingly Disclosed Plaintiff's "Personally Identifiable Information" to Meta

Finally, Defendant argues that the Complaint fails to adequately allege facts showing that Defendant "knew that [a] privacy violation would occur" when it disclosed Plaintiff's "personally identifiable information" to Meta. (*See* Doc. 6, Mot., at PageID 51). The argument is also baseless.

The Complaint contains numerous factual allegations demonstrating that Defendant knowingly disclosed Plaintiff's and all of its other consumers' personally identifiable information to Meta by installing the Meta Pixel on its website in order to improve its marketing and advertising abilities. Specifically, the Complaint alleges that "Defendant knowingly disclosed Plaintiff's and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Websites, **knowing that such code would transmit the subscription purchased by its consumers and the purchasers' unique identifiers** (including FIDs)." (Doc. 1, Compl., ¶ 68, at PageID 23 (emphasis added)). The Complaint bolsters these allegations with the following allegations:

- "Plaintiff brings this action to redress Defendant Continued.com, LLC's ("Continued") practices of knowingly disclosing Plaintiff's and its other

10

- customers' identities and their purchases of subscriptions to access prerecorded video content to Meta . . . ." (Doc. 1, Compl., ¶ 1, at PageID 2) (emphasis added)

- "[T]he Meta Pixel technology that Defendant **intentionally installed** on its Websites transmits the fact that a consumer purchased a subscription to video materials or services alongside his or her FID to Meta . . . ." (*Id.*, ¶ 41, at PageID 15 (emphasis added)).

- "Defendant **intentionally programmed its websites (by following step-by-step instructions from Meta's website) to include the Meta Pixel code** in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta." (*Id.*, ¶ 50, at PageID 18).

- "With only a person's FID and the knowledge that a person purchased a subscription to Defendant's website—**all of which Defendant knowingly provides to Meta**. . . ." (*Id.*, ¶ 51, at PageID 18 (emphasis added)).

- "At all relevant times, Defendant **knew that the Meta Pixel was disclosing its subscribers' Private Viewing Information to Meta**." (*Id.*, ¶ 53, at PageID 19 (emphasis added)).[2]

- "Defendant could easily have programmed its websites so that none of its subscribers' detailed Private Viewing Information is disclosed to Meta. Instead, **Defendant chose to program its websites so that all of its subscribers' detailed Private Viewing Information is sent to Meta**" (*Id.*, ¶ 54, at PageID 19 (emphasis added)).

Any one of these well-pled allegations, standing alone, would be sufficient to allege Defendant's knowing disclosure of Plaintiff's personally identifiable information to Meta. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *9 (N.D. Tex. July 22, 2024); *Feldman*, 659 F. Supp. 3d at 1022; *Harris*, 662 F. Supp. 3d at 1336. Taken together, they paint a clear picture of Defendant's intentional effort to improve its marketing capabilities by knowingly installing and utilizing the Meta Pixel to systematically disclose all of its subscribers' personally identifiable information to Meta. *See e.g., Watson Carpet*

---

[2] The Complaint defines "Private Viewing Information" as "information that reveals a particular person purchased a subscription to access prerecorded video content on Defendant's Websites." (Doc. 1 at ¶ 3).

11

*& Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (finding allegations sufficient where the complaint offers direct allegations of the claim supported by instances to support those allegations).³

Indeed, courts across the country have routinely held that a defendant who intentionally installs the Meta Pixel technology on its website, as Plaintiff alleges Defendant did here, is deemed to have knowingly disclosed to Meta the customer information that the installed Meta Pixel technology ultimately transmits to Meta. For example, in *Czarnionka v. Epoch Times Association, Inc.*, the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be PII or knew it was transmitted[.]" *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3. The court soundly rejected this argument based on the complaint's allegations that the defendant programmed the Meta Pixel into its website code and knew that it would transmit video titles and Facebook IDs to Meta. *See id.* ("The Complaint plainly alleges that Defendant's "disclosures were made knowingly, as [Defendant] programmed the Facebook Pixel into its website code . . . Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary."). Other courts considering the issue have consistently reached the same conclusion. *See, e.g.*, *Lebakken*, 640 F. Supp. 3d at 1342-43 (distinguishing *In re Hulu Priv. Litig.* as procedurally different); *Frawley v. Nexstar Media Grp. Inc.*, 2024 WL 3798073, at *1 (finding allegations "that 'Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API on its website to track and transmit their Personal Viewing Information to third parties' and '[a]t all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook" . . . are "sufficient to state a claim"); *Li*,

---

³ Interestingly, Defendant relies on the summary judgment decision from *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1092 (N.D. Cal. 2015), without mentioning that the same court did not reach the issue when it denied the motion to dismiss. *See In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *3 (N.D. Cal. Aug. 10, 2012).

2023 WL 7280519, at *4 (collecting cases of the same); *Feldman*, 659 F. Supp. 3d at 1022 ("It follows that a VPPA plaintiff need not allege—to meet the VPPA's "knowingly" element—that the video tape service provider knew that the person to whom personally identifiable information was disclosed would "actually connect" the disclosed information."); *Harris*, 662 F. Supp. 3d at 1336 (finding the "knowingly" element satisfied and rejecting a defendant's argument that precise knowledge be pleaded); *Belozerov*, 646 F. Supp. 3d at 315 (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) ("Contrary to Defendants' assertions, it does not matter, at least at this stage, whether they knew that each individual user had a Facebook account, nor whether Facebook, in fact, linked such information to particular accounts."), *appeal dismissed sub nom. Adams v. Am.'s Test Kitchen, Inc.*, No. 23-1592, 2024 WL 3515257 (1st Cir. July 17, 2024).

The Complaint adequately alleges that Defendant knowingly disclosed its consumers' Facebook IDs and URLs identifying and containing the names of the video materials or services that the consumers requested or obtained to Meta in violation of the VPPA.[4]

## CONCLUSION

For the reasons stated herein, the Motion should be denied.

Respectfully submitted,

**O'CONNOR, HASELEY AND WILHELM, LLC**

Dated: December 11, 2024

/s/ Daniel J. O'Connor
Ohio Supreme Court No. 0091397
O'CONNOR, HASELEY AND WILHELM, LLC
470 West Broad Street, Suite 15,
Columbus, OH 43215

---

[4] In the unlikely event the Court finds that the Complaint's allegations are insufficient to state a claim in any respect, Plaintiff respectfully requests leave to amend to allege additional facts to cure any such deficiency.

Telephone: (614)246-8840
doconnor@goconnorlaw.com

*and*

**HEDIN LLP**

Elliot O. Jackson, *pro hac vice*
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

*Counsel for Plaintiff and Putative Class*

14