**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **VICTORIA LOVETT, individually and on behalf of all others similarly situated,** | : | **CASE NO. 1:24-cv-00590** |
| | : | |
| | : | **Judge Douglas R. Cole** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **CONTINUED.COM, LLC,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**DEFENDANT CONTINUED.COM, LLC's REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff's Opposition tries to salvage her VPPA claim against Continued by ignoring Continued's arguments and misrepresenting her Complaint's allegations. Ultimately, Plaintiff fails to state a VPPA claim because she fails to allege facts plausibly satisfying three statutory elements.

First, Continued is not a "video tape service provider." The VPPA's ordinary meaning at enactment did not encompass distributors of exclusively-digital video content like Continued. Rather than engage with this ordinary meaning, Plaintiff's Opposition relies on faulty dictionary definitions, a perfunctory textual analysis, and irrelevant legislative history. This Court should refuse Plaintiff's ill-founded attempt to expand the VPPA far beyond its original meaning.

Second, Plaintiff has failed to plausibly allege that Continued disclosed her "personally-identifiable information." Plaintiff's Complaint alleged that Continued disclosed only two items to Meta: (1) her purchase of a SpeechPathology.com subscription; and (2) her FID. But Plaintiff's Opposition does not explain how, just by knowing these two items, an ordinary person could discover what specific SpeechPathology.com videos Plaintiff watched (if any). Instead, the Opposition tries to salvage Plaintiff's claim by adding new allegations found nowhere in her Complaint.

Finally, even if Continued did disclose "personally-identifiable information," Plaintiff has failed to allege that it did so "knowingly." Plaintiff failed to allege that Continued knew that Meta would pair her FID and SpeechPathology.com subscription to identify her video-viewing history, rather than simply for targeted advertising. Plaintiff's Opposition tries to avoid Plaintiff's burden on this knowledge requirement by appealing to an unreasoned district court opinion, one at odds with Supreme Court's approach to statutory mens rea requirements.

## ARGUMENT

**I.  Plaintiff Fails to State a VPPA Claim Because Continued Is Not a "Video Tape Service Provider."**

Under the VPPA, a "video tape service provider" is a "person engaged in the business . . . of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Plaintiff contends that Continued qualifies as one, because its website (SpeechPathology.com) hosts digital educational videos "similar to prerecorded video cassette tapes." (Doc. 1, Compl. ¶ 65, at PageID 23.) But although Plaintiff pays lip service to the VPPA's ordinary meaning, her cursory textual analysis fails to live up to its billing. (Doc. 9, Opp. at PageID 61–63.)

For a start, Plaintiff uses a dictionary published more than a *decade* after the VPPA's enactment. (Doc. 9, Opp. at PageID 62 (quoting *Material*, Oxford English Dictionary (3d ed. 2001), online version March 2012).) But a dictionary from **2001** hardly provides a reliable guide to ordinary meaning in **1988**.[1] *See Garland v. Cargill*, 602 U.S. 406, 437 (2024) ("[C]ontemporaneous dictionary definitions" provide "some of the best evidence of [a statute's] contemporaneous understanding"); *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019) ("When interpreting the words of a statute, contemporaneous dictionaries are the best place to start.").

---

[1] This 13-year time gap is particularly relevant here, where Plaintiff seeks to extend an analog-era statute to digital-era technology, given the profound transformation in digital technology during this period—especially as it relates to video materials. *See* Raphael Cohen-Almagor, *Internet History*, Int'l J. Technoethics, Apr. 2011, at 45, 54, 56 ("The mid-1990s were the years when the Internet established itself as the focal point for communication, information and business," so that by the early 2000s "the technology facilitated peer-to-peer file sharing networks, photo and video generation and sharing."); *see also The Internet Revolution: A Global Perspective* (Emmanuele Giovannetti, Mitsuhiro Kagami & Masatsugu Tsuji eds., 2003) ("Aided by the reduced cost and increased availability of computers and computer-related products, as well as technological advances in telecommunications, online networks spread rapidly throughout the world over the late 1990s.").

Indeed, the definition that Plaintiff employs does *not* appear in the second edition of the very same dictionary, published in 1989. *See Material*, Oxford English Dictionary (2d ed. 1989). Instead, this edition, closer to the VPPA's 1988 enactment, defines "Material" in line with Continued's interpretation: "Of or pertaining to matter or body; formed or consisting of matter; corporeal," and "Concerned with or involving matter or corporeal substance, its presence, use or agency." *Id.*

Nor is Plaintiff's textual exegesis much better. Plaintiff fails to engage with Continued's contextual reading of the provision, simply dismissing it out of hand as "nonsense." (Doc. 9, Opp. at PageID 61; *see* Doc. 6, Mot. to Dismiss, at PageID 44–45.) Instead, Plaintiff mechanistically combines dictionary definitions, concluding that "'similar audio visual materials' means any prerecorded audio visual material that is almost the same as, but not identical to, prerecorded video cassette tapes." (Doc. 9, Opp. at PageID 62.) But Plaintiff merely asserts, without explaining, that this "includ[es] prerecorded audio visual content in digital form, regardless of the method of its delivery (on the internet or otherwise)"—hardly a self-evident proposition. (Doc. 9, Opp. at PageID 62.) Ultimately, Plaintiff fails to explain how or why an ordinary person in 1988 would consider the distributor of exclusively-digital video content a "video tape service provider," much less rebut Continued's explanation to the contrary. (*See* Doc. 6, Mot. to Dismiss, at PageID 45–46.)

Plaintiff's expansive reading also offends the "canon against surplusage," the principle "that 'every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that caused it to . . . have no consequence.'" *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) at 174). Plaintiff claims that the VPPA covers all "prerecorded audio visual content . . . regardless of the method of its delivery"—in other words, *all* "audio visual materials."

3

(Doc. 9, Opp. at PageID 62). But this broad reading would give no effect to Congress's limiting reference to "prerecorded video cassette tapes."[2] 18 U.S.C. § 2710(a)(4).

Plaintiff also resorts to irrelevant legislative history in a futile attempt to defeat the text's plain meaning. Plaintiff's Opposition quotes a single floor speech by Senator Leahy, expounding on the Senator's personal fears about technology's threats to privacy. (Doc. 9, Opp. at PageID 64, quoting S. Rep. No. 100-599 at 5–6 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5–6.) But Senator Leahy's concerns are irrelevant to whether, under the VPPA as originally understood, a distributor of exclusively-digital video content is a "video tape service provider." Indeed, Plaintiff fails to acknowledge the relevant legislative history cited by Continued's Motion to Dismiss, which does bear on the meaning of "video tape service provider." (Doc. 6, Mot. to Dismiss, at PageID 45–46 n.2, quoting S. Rep. 100-599, at 12 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-10.) As Continued explained, this legislative history only reinforces the text's plain meaning: that Congress intended the VPPA to cover only distributors of physical audio-visual recordings.[3] (Doc. 6, Mot. to Dismiss, at PageID 45–46 n.2.)

For these reasons, Continued does not distribute "similar audio visual materials" to "prerecorded video cassette tapes." So Plaintiff has failed to plausibly allege that Continued is a "video tape service provider" under the VPPA.

---

[2] Plaintiff's Opposition also fails to address the *Noscitur a Sociis* canon, the rule of lenity, or the VPPA's title—all of which militate against her expansive interpretation of "video tape service provider." (Doc. 6, Mot. to Dismiss, at PageID 46–47.)

[3] Plaintiff's reference to a 2012 amendment to the VPPA's consent procedures is also irrelevant, since the amendment "left the definition of 'videotape [sic] service provider' untouched." (Doc. 9, Opp. at PageID 63.) A post-enactment Congress's potential (mis)understanding of a statutory provision it failed to amend provides no guidance to the provision's ordinary meaning when enacted nearly twenty-five years earlier.

II. **Plaintiff Fails to State a VPPA Claim Because She Does Not Allege Continued Disclosed Any of Her "Personally Identifiable Information."**

Plaintiff's Complaint also fails to allege that Continued disclosed her "personally identifiable information." The VPPA defines "personally identifiable information" as "information which identifies *a person* as having requested or obtained *specific* video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphases added). Plaintiff's Complaint fails to plausibly allege that Continued's disclosures identified Plaintiff: (a) as "a person"; and (b) "as having requested or obtained specific video materials or services." *Id.*

First off, Plaintiff does not plausibly allege that Continued's disclosures identified her as "a person," rather than merely as an anonymized number used for targeted advertising. Plaintiff's claim that Continued identified her personally hinges on the allegation that the Pixel transmitted her FID. (*See* Doc. 1, Compl. ¶¶ 11, 13, 41, 49–52, at PageID 5, 15, 18–19.) But a FID, a simple number, cannot by itself reveal its owner's identity. Instead, a FID *could* be used to find its owner's Facebook profile—which in turn *could* reveal the owner's identity. (*See* Doc. 1, Compl. ¶¶ 3, 44, n.21, at PageID 3, 16.)

But here, Plaintiff's Complaint does not allege that her FID linked to a Facebook page displaying her name, email address, or any other information an ordinary person could use to uncover her identity. (*See* Doc. 1, Compl. ¶¶ 8, 11, at PageID 4–5.) Without this allegation, knowledge of Plaintiff's FID might not reveal her identity—perhaps because Plaintiff used a pseudonymous account, set her profile to "private," or otherwise omitted identifying information from public display. So under the facts in her Complaint, Plaintiff failed to plausibly allege that Continued's disclosure of the FID would "readily permit[] an *ordinary person* to identify" her as the "particular individual" who bought a SpeechPathology.com subscription. *See Eichenberger v.*

5

*ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *in re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)).[4]

Plaintiff also fails to plausibly allege that Continued disclosed her "personally identifiable information" for another, independent reason: the alleged disclosures did not identify her "as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). Plaintiff's Complaint alleges only that Continued disclosed her purchase of a SpeechPathology.com subscription. (Doc. 1, Compl. ¶ 13, at PageID 5; *see also* Doc. 9, Opp. at PageID 68–69.) To be sure, "the domain name"—SpeechPathology.com—may "identify the subject matter of the content . . . hosted on that site." (Doc. 9, Opp. at PageID 66.) But Plaintiff does not dispute that by itself, this disclosure "does not reveal whether [Plaintiff] watched any videos on the website, much less any *specific* videos [she] watched." (Doc. 6, Mot. to Dismiss, at PageID 11.) At bottom, Plaintiff's allegation is akin to alleging that Blockbuster video disclosed that she had a Blockbuster rental card without disclosing any videos that the rental card holder rented. By itself, such a disclosure would not violate the VPPA.

Perhaps sensing the weakness of her case, Plaintiff's Opposition tries to slip in a new factual allegation: that Continued disclosed "**URLs** that identified the specific prerecorded video

---

[4] Plaintiff tries, but fails, to distinguish two district court opinions cited by Continued's Motion to Dismiss. (Doc. 9, Opp. at PageID 67) (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Edwards v. Learfield Commc'ns*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023)). Plaintiffs in both cases, like Plaintiff here, failed to "allege their Facebook pages contain any personal information, such as their names or email addresses." *Ghanaat*, 689 F. Supp. 3d at 720; *see also Edwards*, 697 F. Supp. 3d at 1307–08 (same). Plaintiff's allegation that a person creating a Meta account must provide her "name, birth date, gender, and phone number or email address" does not dispel this comparison—since the allegation fails to assert that Meta displays this registration information on every person's Facebook profile. (Doc. 9, Opp. at PageID 67, quoting Doc. 1, Compl. ¶ 42, at PageID 15.)

6

products or services requested or obtained by Plaintiff." (Doc. 9, Opp. at PageID 65) (emphasis added.) But none of Plaintiff's citations to the Complaint contain this allegation–nor can it be found **anywhere** else in her Complaint.[5] (*See* Doc. 1, Compl. ¶¶ 3, 41, 52–56, at PageID 3, 15, 18–19.) Indeed, the word "URL" appears in the Complaint only once—and only relating to allegations on how to access Facebook. (*See* Doc. 1, Compl. ¶ 51, at PageID 18.)

Yet even if Plaintiff's Complaint alleged that Continued disclosed the URLs of SpeechPathology.com pages she visited, such disclosure would not reveal her "personally identifiable information." After all, "merely disclosing the name of [a] webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023); *see also id.* at 285 (rejecting the argument "that providing a URL associated with a video is sufficient to state a VPPA claim"). Plaintiff's Opposition essentially concedes this point by failing to even try to distinguish *Martin*, even though the case was extensively discussed by Continued's Motion to Dismiss. (Doc. 6, Mot. to Dismiss, at PageID 49–50.)

So under the facts alleged by Plaintiff's Complaint, Continued did not disclose Plaintiff's "personally-identifiable information."

---

[5] This pleading deficiency distinguishes Plaintiff's case from ones in which the plaintiffs pleaded that the defendant used the Meta Pixel to disclose "the URLs identifying or naming the prerecorded videos requested or obtained by each of them." (Doc. 9, Opp. at PageID 66.)

### III. Plaintiff Fails to State a VPPA Claim Because She Has Not Adequately Alleged That Any Disclosure of "Personally Identifiable Information" Was "Knowing."

Finally, even if Plaintiff plausibly alleged that Continued disclosed Plaintiff's "personally identifiable information," Plaintiff fails to plausibly allege that the disclosure was "knowing."

The VPPA provides that only a "video tape service provider who *knowingly* discloses . . . personally identifiable information . . . shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1) (emphasis added). To satisfy the VPPA's knowledge requirement, a plaintiff must plausibly claim that the defendant "actually knew that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015); *accord Adams v. America's Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass 2023); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1019 (D. Minn. 2023); *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *9 (S.D.N.Y. Feb. 21, 2024); *Louth v. NFL Enters. LLC*, No. 1:21-cv-00405-MSM-PAS, 2022 WL 4130866, at *3 (D.R.I. Sept. 12, 2022).

Assuming that Continued disclosed Plaintiff's "personally identifiable information,"[6] Plaintiff has plausibly alleged that Continued had knowledge as to the first two elements. After all, her Complaint alleges that Continued "intentionally installed and programmed the Meta Pixel . . . knowing that such code would transmit the subscription purchased by its consumers," along with their FIDs. (Doc. 1, Compl. ¶ 68, at PageID 23–24.) But Plaintiff has failed to allege Continued's knowledge of the third element, since her Complaint does not assert that Continued knew that Meta would combine Plaintiff's Speech Pathology.com subscription and FID to identify

---

[6] *But see supra* Section II.

her as the "person" who "requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). (*See* Doc. 6, Mot. to Dismiss, at PageID 51–52.)

Plaintiff's Opposition does not challenge that she needs to prove all three elements. Nor does it point to any allegations relevant to Continued's knowledge of the third element. Indeed, Plaintiff does not dispute that under the facts alleged, "Continued could reasonably believe it was transmitting anonymized information that Meta would use only for targeted advertising to Facebook users like Plaintiff." (Doc. 6, Mot. to Dismiss, at PageID 51.)

Instead, Plaintiff asks the Court to follow another district court's suggestion that "[k]nowledge of what [the recipient] might do with the disclosed information to yield ["personally-identifiable information" is] unnecessary" for a VPPA claim. (Doc. 9, Opp. at PageID 70, quoting *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022).) But the *Czarnionka* court did not accompany this conclusion with any reasoning to justify allowing plaintiffs to bypass proof of a defendant's knowledge of an essential element of a VPPA claim. To the extent there is any tension between the two cases, this Court should follow the *Hulu* court's more extensive and persuasive reasoning.[7] (*See* Doc. 6, Mot. to Dismiss, at PageID 51–52.)

---

[7] To be sure, Plaintiff correctly notes that the *Hulu* court decided the mens rea issue by granting summary judgment, rather than a motion to dismiss. (Doc. 9, Opp. at PageID 70 n.12.) But the *Hulu* court's reasoning applies equally at the pleading stage. 86 F. Supp. 3d at 1097 ("To state an actionable claim under the VPPA, a plaintiff must prove that the video-service provider actually knew that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two."). Nor does *Hulu* stand alone in requiring proof of knowledge on all three elements. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) (If a defendant "did not think it was conveying [personally-identifiable information], then there could be no knowledge of the conveyance."), *adopted by* No. 17-CV-4570 (LAK), 2017 3726050 (S.D.N.Y. Aug. 28, 2017).

9

Indeed, *Hulu* proves more faithful to how the Supreme Court reads similar statutory mens rea requirements. More than once, the Supreme Court has "held that a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'" *Ruan v. United States*, 597 U.S. 450, 458 (2022) (quoting *Rehaif v. United States*, 588 U.S. 225, 232 (2019)). Applied to the VPPA, this insight confirms that "knowingly" modifies not only the term "discloses," but also the term "personally identifiable information." 18 U.S.C. § 2710(b)(1). So given the VPPA's definition of "personally identifiable information," a VPPA plaintiff must show that a video tape service provider knew it was sharing information that "identifie[d]" the plaintiff "as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3). Such knowledge is what "separate[s] wrongful" disclosures that a video tape service provider knows will lead to privacy violations from "innocent" disclosures of anonymized data. *See Rehaif*, 588 U.S. at 232. This Court should follow the Supreme Court's lead and refuse to read the term "knowingly" in the VPPA to allow a claim like Plaintiff's, which threatens liability for "an innocent mistake to which criminal sanctions do not normally attach." *Id.*[8]

For these reasons, Plaintiff has failed to plausibly allege that any disclosure of "personally-identifiable information" by Continued was "knowing."

---

[8] The rule of lenity also supports applying the knowledge requirement to all elements, given that the VPPA is a criminal statute with civil penalties. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). Plaintiff does not dispute that the rule of lenity applies here. (*See* Doc. 6, Mot. to Dismiss, at PageID 46.).

10

**CONCLUSION**

For these reasons, this Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[9]

                                              Respectfully submitted,

                                              */s/ Beth A. Bryan*
                                              Beth A. Bryan (0082076)
                                              Dominic Bayer (00104319)
                                              TAFT STETTINIUS & HOLLISTER LLP
                                              425 Walnut Street, Suite 1800
                                              Cincinnati, Ohio 45202
                                              Phone: (513) 357-9617
                                              bryan@taftlaw.com
                                              dbayer@taftlaw.com

                                              *Counsel for Defendant Continued.com, LLC*

---

[9] In a single brief footnote at the end of her Opposition, Plaintiff asks the Court for "leave to amend to allege additional facts" if the Court finds that her Complaint's "allegations are insufficient to state a claim." (Doc. 9, Opp. at PageID 71 n.4.)  The Court should deny this cursory request as procedurally improper.
"Requesting leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R. Civ. P. 7(b), which requires that a motion 'shall state with particularity the grounds therefor.'"  *Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006).  The Sixth Circuit has held multiple times that similarly cursory requests in plaintiffs' oppositions to motions to dismiss fail this requirement.  *See, e.g.*, *Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."); *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("[A] bare request in an opposition in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a).") (citation omitted); *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to a motion to dismiss is also not a motion to amend.")  Since Plaintiff's "request" to amend her Complaint flouts Rule 15, this Court should dismiss the Complaint with prejudice.

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above was filed electronically on December 23, 2024. Notice of this filing will be sent to all parties through the Court's electronic filing system.

*/s/ Beth A Bryan*