UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**VICTORIA LOVETT,**

    **Plaintiff,**

  v.

**CONTINUED.COM, LLC,**

    **Defendant.**

Case No. 1:24-cv-590

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Defendant Continued.com, LLC (Continued) moves to dismiss Plaintiff Victoria Lovett's Complaint (Doc. 1), which asserts a claim under the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710 et seq. For the reasons explained below, the Court **GRANTS** Continued's Motion to Dismiss (Doc. 6), and **DISMISSES** Lovett's Complaint (Doc. 1) **WITHOUT PREJUDICE**.

## BACKGROUND[1]

Continued operates a "family of websites" through which consumers can, via subscription, access videos, courses, and other continuing education materials on various topics like speech pathology, audiology, and occupational therapy. (Doc. 1, #2, 5–6). One of those websites is www.speechpathology.com. (*Id.* at #2, 4). On August 15, 2023, Lovett purchased a subscription to that website by "registering and paying"

---

[1] Because this matter comes before the Court on Continued's motion to dismiss, the Court accepts the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

for access and "providing her email address, payment information, and zip code." (*Id.* at #4). During the term of her subscription, Lovett "request[ed] and obtain[ed] pre-recorded videos" from the website. (*Id.* at #5).

But according to Lovett, her subscription to Continued's website came along with a more insidious feature: disclosure of her personally identifiable information (PII). She says that Continued, without her consent, divulged her private viewing information to Meta Platforms, Inc. (Meta)—formerly Facebook, Inc. (*Id.*). The alleged unauthorized disclosure went something like this. Continued apparently embedded "Meta Pixel"—a unique string of code—into its websites so it could "monitor and track" its subscribers' actions. (*Id.* at #15). Then, Continued sent certain data to Meta purportedly to "build detailed" customer profiles and deliver "highly targeted advertising" to those customers. (*Id.*). If the website user had a Meta (i.e., a Facebook) account, Meta could match the anonymous website user to his or her Meta profile through a Facebook ID (FID) number—a "unique and persistent identifier" that Meta assigns each of its users. (*Id.* at #3, 16). That, in turn, allowed Meta to identify the once-anonymous website user by name since a Meta profile includes a person's name and other PII. (*Id.*). According to Lovett, linking a Continued website subscriber to a Meta profile is as simple as appending someone's FID to Facebook.com—i.e., by typing "Facebook.com/[FID]" into a web browser. (*Id.* at #3).

Lovett says that Continued intentionally employed this tactic to disclose two types of her (and others') PII to Meta. (*Id.* at #18–19). She claims that whenever she or another customer "requested or obtained" a subscription to one of Continued's

2

websites "by clicking on it," Continued (1) disclosed to Meta that the consumer had "requested or obtained a subscription to video materials or services," and (2) also divulged the requesting subscriber's FID. (*Id.*). In short, she complains about disclosure of both the subscription itself and her unencrypted FID. (*Id.*). And Lovett adds that Continued could have programmed its websites to exclude the Meta Pixel but did not. (*Id.* at #19).

Upset that Continued did not notify her of these disclosures or otherwise obtain her consent, Lovett filed this single-count, putative class action lawsuit on October 16, 2024. She asserts that Continued violated the VPPA by knowingly disclosing its subscribers' PII to a third party without their informed, written consent. (*Id.* at #22–25). And she hopes to represent a nationwide class of individuals who "during the two years preceding the filing of this action, purchased a subscription to access prerecorded video material or services from any one of Defendant's family of Websites while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc." (*Id.* at #20).

Continued now moves to dismiss the Complaint under Federal Rule of Procedure 12(b)(6). (Doc. 6). It argues that Lovett has not plausibly alleged most of the elements necessary to state a viable VPPA claim. (*Id.* at #42–43). Specifically, Continued claims that (1) it is not a "video tape service provider" (which also means Lovett is not a "consumer"), (2) the information it allegedly disclosed is not "personally identifiable information," and (3) it did not "knowingly" disclose the information. (*Id.* at #42–52).

Lovett responded, disagreeing on all fronts. She maintains that her allegations are up to snuff on each required VPPA element. (*See generally* Doc. 9). Continued replied. (Doc. 10). So the motion is ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

At the motion-to-dismiss stage, in assessing plausibility of the merits, the Court "must accept the complaint's well-pleaded factual allegations as true." *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1116 (6th Cir. 2023); *Iqbal*, 556 U.S. at 678. And the Court must "draw all reasonable inferences" in the plaintiffs' favor. *Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up).

4

## LAW AND ANALYSIS

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). To state a VPPA claim, then, Lovett must plausibly allege (1) that Continued is a "video tape service provider," (2) that it disclosed "personally identifiable information," and (3) that it did so "knowingly," and (4) without authorization. *See id.*; *see also Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023). And the statute helpfully defines some of those terms. Especially relevant here, a "'video tape service provider' means any person, engaged in the business ... of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3).

Continued says Lovett's allegations fall short on the first three of those required elements. As for the first element, Continued disclaims status as a video tape service provider because, in its view, it does not rent, sell, or deliver "prerecorded video cassette tapes or similar audio visual materials." (Doc. 6, #44–47 (quoting 18 U.S.C. § 2710(a)(4))). Continued's argument as to the second element—whether the allegedly divulged information was PII—is twofold. It insists that the alleged disclosures didn't identify (1) Lovett as a particular person, or (2) "any 'specific' videos that she 'requested or obtained.'" (*Id.* at #46–50 (quoting 18 U.S.C. § 2710(a)(3))). Finally, with respect to the third element, Continued complains that Lovett's

Complaint misses the mark in alleging that Continued acted knowingly. (*Id.* at #51–52). The Court ultimately agrees that Lovett's allegations fall short on the second element—PII. And given that deficiency, her VPPA claim fails, which means the Court need not reach the other elements.

As several courts have acknowledged, the VPPA's text does not explain "the scope of information" the term PII encompasses. *See, e.g.*, *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015). A few circuits outside the Sixth Circuit, however, have defined that scope, but have done so in slightly different terms. In the First Circuit, for example, "PII is not limited to information that explicitly names a person," but also includes "information reasonably and foreseeably likely to reveal which … videos [a person] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). The Third and Ninth Circuits more narrowly circumscribe PII's scope to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting the Third Circuit's "ordinary person standard").

The questions here, then, are (1) which standard applies (since the Sixth Circuit has not yet addressed this issue), and (2) whether Continued's alleged disclosure of Lovett's FID and website subscription qualifies as PII under that standard. Ultimately, though, the Court need not determine which standard is appropriate because Lovett's Complaint fails under either. That is because, whatever

else they might require, both standards limit PII to information that will allow a third-party to determine what videos a person has watched. So, for example, "[c]ourts have uniformly held [FIDs] to constitute PII under the VPPA" where "the plaintiff alleges that her [FID] was disclosed *alongside the viewed video's URL and name*." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (emphasis added) (collecting cases). Here, although Lovett alleges that Continued disclosed her FID and website subscription, she does not allege facts giving rise to a reasonable inference that Continued disclosed the URL or name of the videos she accessed by way of that subscription, or anything else that would allow Meta (or anyone else) to determine the particular videos she watched. And that deficiency is fatal to her claim. Recall that the VPPA defines PII as information that identifies a person "as having requested or obtained *specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). If Continued divulged only Lovett's website subscription, as she alleges, that alone "does not indicate that [Lovett] requested or obtained specific video materials" on the speechpathology.com website. *Martin*, 657 F. Supp. 3d at 284. It merely indicates that Lovett *could* access videos on the website. And that's not sufficient to bring Lovett within the VPPA's reach. *Id.* at 283–85.

True, the Complaint does state that, armed with the information allegedly divulged, an "ordinary person could learn the identity of the [subscriber] to whom the FID corresponds and the specific video products or services" he or person requested. (Doc. 1, #18). But that doesn't cut it. Read in the context of the rest of the Complaint, this allegation merely implies that an ordinary person could learn that the subscriber

7

had subscribed to the video service itself (i.e., had a subscription that would allow the subscriber to access videos). The Complaint alleges no facts suggesting that Continued disclosed the *specific videos* its subscribers accessed. To the contrary, the Complaint repeatedly alleges that Continued disclosed "that [Lovett] and members of the Classes *purchased subscriptions* on any one of [Continued]'s websites." (*Id.* (emphasis added); *see also id.* at #19 ("[Continued] disclosed to Meta that … the purchaser requested or obtained *a subscription to video materials or services*." (emphasis added))). That means Lovett failed to plausibly allege her VPPA claim.

Lovett disagrees. According to her, the Complaint alleges that Continued disclosed both her FID and "the URLs that identified the specific prerecorded video products or services" Lovett "requested or obtained." (Doc. 9, #65). But that reading stretches the Complaint too far. Other than one reference to a Facebook.com URL (which related to the ease of finding a person's Meta profile by appending an FID to the end of that URL), Lovett's Complaint is devoid of allegations concerning URLs. And for the reasons discussed, disclosing a website subscription isn't enough to satisfy the VPPA's PII element.

The cases Lovett cites prove the point. Take *Harris v. Public Broadcasting Service* as an example. That court found that it was not disclosure of the plaintiff's FID that established VPPA liability, but "the bundling of the FID … with the URLs of the videos [the plaintiff] watched that matter[ed]." *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023). So too in *Golden v. NBCUniversal Media, LLC*. There, it was the plaintiff's allegation that the defendant disclosed her FID

8

"alongside the viewed video's URL and name" that created liability. 688 F. Supp. 3d at 150. *Guereca v. Motorsport.tv Digital, LLC* is no different. That court found that, together, disclosure of "FIDs alongside the URLs and titles of videos" accessed "constitute[d] PII under the VPPA." (Order, No. 1:24-cv-24066 (S.D. Fla. Feb. 19, 2025), Doc. 30, #8–9). In short, the plaintiffs in those cases alleged that the relevant defendant disclosed the names *and* URLs of the *specific* videos accessed. Not so here. Lovett merely alleges that Continued disclosed her FID and her website subscription, not the specific videos or content she viewed. But none of the courts in the cases she cites found that sort of disclosure sufficient to create VPPA liability. And neither does this Court.

## CONCLUSION

For the reasons stated, the Court **GRANTS** Continued's Motion to Dismiss (Doc. 6). But because this is a first dismissal, the Court **DISMISSES** Lovett's action **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

July 1, 2025
 **DATE**                                          **DOUGLAS R. COLE**
                                                   **UNITED STATES DISTRICT JUDGE**

9