**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VICTORIA LOVETT,

        Plaintiff,

              Case No. 1:24-cv-590

    v.

              JUDGE DOUGLAS R. COLE

CONTINUED.COM, LLC,

        Defendant.

## OPINION AND ORDER

The Court previously granted Defendant Continued.com, LLC's (Continued) Motion to Dismiss Plaintiff Victoria Lovett's Complaint. (*See* Op. and Order, Doc. 14). But the Court dismissed without prejudice, leaving open the possibility for Lovett to replead her Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710 et seq., claim with additional allegations. (*Id.* at #119). She did so. (*See* Am. Compl., Doc. 16). Continued now moves to dismiss that Amended Complaint. (Mot. to Dismiss, Doc. 17). For the reasons below, the Court finds that Lovett sufficiently states a claim and so **DENIES** Continued's Motion to Dismiss (Doc. 17).

## BACKGROUND[1]

As the Court laid out in its previous Opinion and Order, "Continued operates a 'family of websites' through which consumers can, via subscription, access videos,

---

[1] Because this matter is before the Court on Defendant's motions to dismiss, the Court must accept the well-pleaded allegations in the Amended Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the Amended Complaint's allegations to recount the case's background, it reminds the reader that they are just that—allegations.

courses, and other continuing education materials on various topics like speech pathology, audiology, and occupational therapy." (Doc. 14, #111; *see* Doc. 16, #126). Lovett alleges she purchased a subscription to one of those websites (www.speechpathology.com) and accessed prerecorded videos. (Doc. 16, #124–25).

But, according to Lovett, her subscription to Continued's website came along with a more insidious feature: disclosure of her personally identifiable information (PII) to Meta Platforms, Inc. (Meta) (formerly Facebook, Inc.). (*Id.* at #125). She claims that Continued embedded an advertising tool known as "Meta Pixel" into its websites so it could "monitor and track" its subscribers' actions. (*Id.* at #139–40). Continued then sent that tracking data to Meta so Meta could "build detailed" customer profiles and deliver "highly targeted advertising" to those customers. (*Id.* at #140). Importantly, if the subscriber possesses a Meta account (usually, a Facebook profile), the information that Continued sent included that subscriber's Facebook ID (FID) number: a "unique and persistent identifier" that Meta assigns each user. (*Id.* at #123, 140). According to Lovett, Meta (and anyone else) can link a Continued website subscriber to a Meta profile by simply appending that FID to Facebook.com— i.e., by typing "Facebook.com/[FID]" into a web browser. (*Id.* at #140). A Meta profile typically contains its creator's name alongside other PII. (*Id.*).

So Lovett sued. Her original Complaint brought a single-count, putative class action lawsuit under the VPPA based on the disclosure of her (and other consumers') PII to Meta. (*See generally* Doc. 1). Specifically, she alleged that Continued (1) disclosed to Meta that its subscribers had "requested or obtained a subscription to

video materials or services," and (2) also divulged those subscribers' FIDs. (*Id.* at #18–19). But in response to Continued's Motion to Dismiss (Doc. 6), the Court dismissed that Complaint based on a pleading defect. (*See* Doc. 14). That was because the VPPA defines PII as information that identifies a person "as having requested or obtained *specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). And Lovett's original Complaint did "not allege facts giving rise to a reasonable inference that Continued disclosed the URL or name of the videos she accessed by way of that subscription, or anything else that would allow Meta (or anyone else) to determine *the particular videos she watched.*" (Doc. 14, #117 (emphasis added)). Based on that pleading failure, the Court dismissed the Complaint without prejudice. (*Id.* at #119).

One week later, Lovett filed her Amended Complaint. (*See* Doc. 16). This time, she alleges that via the Meta Pixel, Continued disclosed its "customer's Facebook ID, the specific video service that each of its customers purchased on any one of its Websites, and the specific title of every video (prerecorded or not) requested or obtained using that service." (*Id.* at #123).

Continued, for its part, once again moves to dismiss under Federal Rule of Procedure 12(b)(6). (Doc. 17). It argues that Lovett does not plausibly allege most of the elements necessary to state a viable VPPA claim. (*Id.* at #160–61). Specifically, Continued continues to argue that (1) it is not a "video tape service provider," (2) the information it allegedly disclosed is not "personally identifiable information," and (3) it did not "knowingly" disclose that information. (*Id.* at #161–71; *see* Doc. 6, #42–52).

3

Lovett responded, disagreeing on all fronts. She maintains that her allegations are up to snuff on each required VPPA element. (*See generally* Doc. 18). Continued replied. (Doc. 21). So the motion is ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett*, 528 F.3d at 430.

## LAW AND ANALYSIS

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). To state a VPPA claim, then, Lovett must plausibly allege (1) that Continued is a "video tape service provider," (2) that it disclosed "personally identifiable information," and (3) that it did so "knowingly," and (4) without authorization. *See id.*; *see also Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). The statute helpfully defines at least some of those terms.

4

Especially relevant here, a "'video tape service provider' means any person, engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And again, "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3).

In its previous motion to dismiss, Continued argued that Lovett's allegations fell short on the first three of the four required elements noted above, and Continued does so again here. (*See* Docs. 6, 17). In ruling on that first motion, the Court agreed as to the second element (PII) because Lovett failed to allege that Continued disclosed to Meta the specific videos its subscribers accessed. (Doc. 14, #117–18). As that was dispositive on Lovett's Complaint, the Court declined to reach Continued's other arguments at that time. (*Id.*). Today, though, the Court does so and finds them wanting.

1.      Continued notes that only a "video tape service provider" can be held liable under the VPPA. 18 U.S.C. § 2710(b)(1). And it says it is not one. (Doc. 17, #161–65). The Court disagrees.

In resolving questions of statutory interpretation, this Court starts, as always, with the statutory text. Again, under the act, "the term 'video tape service provider' means any person, engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Lovett does not allege that Continued is peddling "prerecorded video cassette tapes." Instead, Lovett alleges that Continued—on websites like the one

Lovett accessed (speechpathology.com)—hosts prerecorded *digital* video content. (Doc. 16, #126). So, whether Continued is a "video tape service provider" turns on if its online content fits within the scope of the phrase "similar audio visual materials," and whether it is involved in the "rental, sale, or delivery of" such materials. 18 U.S.C. § 2710(a)(4).

The latter part of that is the easy one, so start there. Lovett plausibly alleges that Continued is "engaged in the business" of renting, selling, and delivering the audio visual materials hosted on its website.

So then the real question is whether that content is "similar audio visual materials" to video cassette tapes. *See* 18 U.S.C. § 2710(a)(4). That depends, of course, on what "similar" means in that phrase. Continued says that "similar … materials" means that the physical form must be similar. (Doc. 17, #163). Lovett says that instead the content must be similar. (Doc. 18, #180). Ultimately, the Court agrees with the latter.

Admittedly, it does not appear that case law in this circuit compels a result one way or the other. Indeed, the Court has failed to identify a single decision by a court in the Sixth Circuit squarely deciding this issue, nor do the parties point to one.[2] But given the ongoing nationwide flood of Meta Pixel VPPA litigation, courts elsewhere have addressed it. And Continued has not cited even one court decision adopting the

---

[2] Those courts in the Sixth Circuit that have weighed in on what makes a defendant a "video tape service provider" under the VPPA have ruled on other grounds, apparently assuming that the statute extends to online digital content. *See, e.g.*, *Goodman v. Hillsdale Coll.*, No 1:25-cv-417, 2025 WL 2941542, at *3–5 (W.D. Mich. Oct. 17, 2025); *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 553–54 (N.D. Ohio 2024).

interpretation of the VPPA it proposes here. In fact, every court (at least that this Court has found) that has considered the question of whether the VPPA extends to online content has found that it does. *See, e.g.*, *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 602–03 (S.D.N.Y. 2025) (citation omitted) ("The term 'video tape service provider' has widely been held by courts in this District to include websites and streaming services that deliver online video content to consumers."); *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1114–15 (W.D. Wis. 2025); *In re Hulu Priv. Litig. (Hulu I)*, No. 11-03764, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

The Court agrees. Online, prerecorded, digital video content is "similar … material" to video cassette tapes in the most obvious sense: it is audio visual content that can be rented, bought, or delivered for home viewing. And zooming out to a broader level, in statutory interpretation, as in language generally, the semantic contribution of individual terms to the overall sense of a given linguistic expression is a function of the context in which those terms appear. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Context is a primary determinant of meaning."); *id.* at 56 ("Of course, words are given meaning by their context."). At least to this Court, the context of the statute makes plain that the VPPA's scope of coverage concerns *what* is delivered to the consumer (prerecorded video content) not *how* it is delivered (brick-and-mortar versus online). The statute lists the prototypical form of video home rental (at least what was typical in 1988) and then includes the language "similar audio visual materials" to *expand* the VPPA's protection to other ways consumers might access

that content in their homes. That suggests a broad meaning. And that makes sense—consumers' privacy concerns as to what they watch in their own home, the key concern underlying passage of the VPPA, arise whether they rent that content from a store or from a website. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (explaining that the VPPA "codifies a context-specific extension of the substantive right to privacy" (emphasis removed)). So the Court concludes that the VPPA covers Continued's activities.

Continued offers various counterarguments, some textual, some contextual, but none persuade. On the textual front, it points to dictionary definitions of "similar" and "material." (Doc. 17, #163). Based on those, it argues that for one thing to be composed of "similar materials" to another, the objects must share some physical traits—usually that they are composed of the same ingredients or substance. (*Id.*). Online digital content and video cassettes are not similar, it says, on that score. (*Id.*). But, while one common definition of the word "material" refers to the "physical substance that things can be made from," the word (unsurprisingly) has many uses.[3] For example, "materials" can also mean "equipment that you need for a particular activity" (e.g., "writing materials") or "printed documents, books, computer programs, etc. that give information, especially ones intended for a particular purpose" (e.g., "publicity material"; "video and other training materials"; and "published material"). Based on those definitions, a simpler (and more ordinary) reading of "similar audio visual materials" is that the VPPA is referring to other similar "equipment"—i.e.,

---

[3] All definitions available at https://dictionary.cambridge.org/dictionary/english/material.

ways of storing and accessing content—that can (like a video cassette tape) be used to watch prerecorded videos.[4] In short, things you watch.

In any event, it is a mistake to draw legal conclusions by mechanically matching statutory terms with dictionary definitions. *See Abuelhawa v. United States*, 556 U.S. 816, 819–20 (2009) (first citing *U. S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993); and then quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)) ("[B]ecause statutes are not read as a collection of isolated phrases, a word in a statute may or may not extend to the outer limits of its definitional possibilities." (cleaned up)); *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); and then citing *Deal v. United States*, 508 U.S. 129, 132 (1993)) ("The plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." (cleaned up)). Context matters. And as noted above, the VPPA's context suggests broad coverage over various ways to expose an individual's in-home prerecorded audio visual content viewing habits.

But Continued has an argument on the contextual front, as well. For example, Continued invokes the contextual canon of noscitur a sociis (a word is known by the company it keeps) to claim that "audio visual materials" should be read narrowly.

---

[4] *Live* audio visual materials are one example of a dissimilar medium not covered by the VPPA. *See Louth v. NFL Enters. LLC*, No. 1:21-cv-405, 2022 WL 4130866, at *4 (D.R.I. Sep. 12, 2022) (granting a motion to dismiss as to live content but denying it as to pre-recorded content viewed in a mobile device application).

(Doc. 17, #164). But the problem with that is that the VPPA does not include the phrase "similar … materials" alongside a list of other terms, which is where noscitur typically applies. *Yates*, 574 U.S. at 544. Rather, the only "company [that phrase] keeps" is the above-discussed reference to prerecorded video cassette tapes. And we already know that the VPPA only extends to materials that are "similar" to such cassettes, so that canon adds nothing to the key issue here—deciding what "similar" means. Likewise, Continued's reference to the VPPA's title—"Wrongful disclosure of video tape rental or sale records"—is unconvincing. (Doc. 17, #164). Sure, video tape rentals were Congress's primary concern in adopting the statute in 1988, but that's because that is how video content was delivered to consumers at the time. It does not foreclose the possibility that Congress drafted the statute in such a way "to cover new technologies for pre-recorded video content." *Hulu I*, 2012 WL 3282960, at *6.

In sum, the Court agrees with what other courts have uniformly found. Online digital content is "similar … material" to video cassette tapes, and is thus included within the VPPA's scope. Accordingly, based on the Court's adopted reading of the statute, Lovett plausibly alleges that Continued is a "video tape service provider."

2.      Separately, Continued argues that Lovett fails on the second element: alleging that it transmitted her Personally Identifiable Information. (Doc. 17, #165–69). As noted above, under the VPPA, PII is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). And remember, Lovett's initial Complaint failed in that regard. That was because she did not allege that Continued

10

disclosed information that would allow a third-party (in this case, Meta) to determine what *specific* videos she watched. (Doc. 14, #117–18). The Amended Complaint fixes this problem. This time, Lovett alleges that, via the Meta Pixel, Continued disclosed each "customer's Facebook ID, the specific video service that each of its customers purchased on any one of its Websites, and the specific title of every video (prerecorded or not) requested or obtained using that service." (Doc. 16, #123).

That is responsive to the concern the Court previously raised, but it turns out that clearing that hurdle does not end the inquiry. That is because Lovett must also allege the "identifies a person" part of PII. 18 U.S.C. § 2710(a)(3). In other words, she must allege that Continued's disclosure enables the recipient to identify the specific *individual* who watched the specific videos. And as Continued points out, she "does not allege that Continued disclosed her name, address, social security number, or any other direct personal identifier to Meta … only that the Pixel's transmissions included her FID." (Doc. 17, #166). But in the end, the Court finds Lovett's allegation that Continued disclosed her FID alongside what videos she watched sufficient at this stage.

As several courts have acknowledged, the VPPA's text does not explain "the scope of information" the term PII encompasses. *See, e.g.*, *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015). A few circuits outside the Sixth Circuit, however, have defined that scope, but have done so in slightly different terms. In the First Circuit, for example, "PII is not limited to information that explicitly names a person," but also includes "information reasonably and foreseeably likely to reveal

11

which … videos [a person] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). The Third and Ninth Circuits more narrowly circumscribe PII's scope to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016); *Eichenberger*, 876 F.3d at 985 (adopting the Third Circuit's "ordinary person standard"). In applying those standards to the Meta Pixel, "[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (first citing *Jackson v. Fandom, Inc.*, No. 22-cv-4423, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) and then citing *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023)); *see also Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2336089, at *8 (S.D. Ohio May 5, 2025) ("It is not necessary to combine the FID with other information in the hands of a third party or to conduct additional investigation to discover an individual's identity."), *report and recommendation adopted*, 2025 WL 2045644 (S.D. Ohio July 22, 2025); *but see Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54–55 (2d Cir. 2025) (finding that the defendant's disclosure of the plaintiff's FID, under the "ordinary person" standard, did not constitute a disclosure of PII in violation of the VPPA), *cert. denied*, 223 L. Ed. 2d 274 (Dec. 8, 2025). So again, the uniform weight of the case law strongly suggests that the Amended Complaint makes the necessary showing on this prong.

12

Despite that majority consensus, though, Continued argues that Lovett's allegations fall short for two reasons: (1) she fails to "allege that her Meta account contains any of her personal information, such as her name or email address" and (2) fails to allege that an ordinary person reviewing a Meta Pixel transmission would readily identify Lovett or her video history, i.e., the ordinary person would not know how to link an FID to an actual person. (Doc. 17, #166–68).

The Court resolves the first easily. The Amended Complaint sufficiently alleges that a Meta account identifies its owner as a person (and by extension, Lovett's account does so). For example, the Amended Complaint alleges that "[t]o create a Meta account, a person must provide, *inter alia*, his or her first and last name, birth date, gender, and phone number or email address." (Doc. 16, #139–40). And that an FID "allows anyone to look up the user's unique Meta profile and thus identify the user by name." (*Id.* at #140). Lovett also alleges that all times relevant, she "had a Meta account, a Meta profile, and an FID associated with such profile." (*Id.* at #125). True, Lovett does not anywhere state that *her specific profile* contains her name or email address. *See Ghanaat*, 689 F. Supp. 3d at 720. But the Court finds that her general allegations about Meta accounts, combined with the specific allegation that she has an account, are sufficient to reasonably infer that her unique Meta profile identifies her by name. And reasonable inferences are what matter at the pleading stage.[5]

---

[5] If Lovett is unable to demonstrate by any evidence that her Meta profile did in fact contain her name, then her claim would presumably fail at the summary judgment stage.

13

Turn to the second. There, Continued claims that its alleged disclosure of Lovett's FID does not constitute a disclosure of PII. (Doc. 17, #167–68). Remember, while most courts to address that question have ruled that FIDs are PII, the Sixth Circuit has not yet weighed in on the issue, nor has it defined the scope of PII in the VPPA context more broadly. Continued argues that the Court should adopt the "ordinary person" test, *see In re Nickelodeon*, 827 F. 3d at 267, and claims that under that test, Lovett fails to plausibly allege how an ordinary person might decode the data sent by the Meta Pixel to identify her video-watching habits. (Doc. 17, #168). The Court once again disagrees.

To start, the Court notes that while it analyzes the facts under the ordinary person test, it declines to formally adopt either PII standard, as "the result is the same under both."[6] *Haines*, 2025 WL 2336089, at *8. Lovett alleges that Continued's configuration of the Meta Pixel discloses "a consumer's (1) FID, (2) their purchase of a total access subscription to Defendant's video service (including the URL where it is available for purchase), [and] (3) the specific videos requested or obtained using that video service (including the URL where each video is available for viewing)." (Doc. 16, #145). And she alleges that with that disclosure, "any ordinary person could learn the identity of the person to whom the FID corresponds" (and thus their entire viewing history), "simply by accessing the URL www.facebook.com/[unencrypted FID]/." (*Id.* at #144–45). "From these facts, the Court may reasonably infer that an

---

[6] Courts have generally considered the "ordinary person" standard to be "the narrower, more demanding approach." *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 287 (S.D.N.Y. 2024).

14

ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID." *Jackson,* 2023 WL 4670285, at \*4 (citations omitted).

True, Continued points to a recent Second Circuit decision reaching the opposite result. *See Solomon,* 136 F.4th at 54–55. In fact, in that case, because the Second Circuit found it implausible that an ordinary person would look at the data transmitted by a Meta Pixel and understand it to be PII, the court "effectively shut the door for Pixel-based VPPA claims" in that circuit. *Hughes v. Nat'l Football League,* No. 24-2656, 2025 WL 1720295, at \*2 (2d Cir. June 20, 2025), *cert. denied sub nom. Hughes v. NFL,* No. 25-868, 2026 WL 642810 (U.S. Mar. 9, 2026) (discussing *Solomon,* 136 F.4th at 54). But the Court is not bound to follow that reasoning here. And based on the facts alleged, the Court finds it plausible that an ordinary person could readily utilize the FID alongside the other information Continued disclosed to identify a specific consumer's video-watching history. *In re Nickelodeon,* 827 F.3d at 267. In the modern era, the ordinary person is certainly capable of typing in what is essentially a URL linked to a specific individual's Meta profile. Accordingly, the Court finds that Lovett has plausibly alleged a disclosure of PII.

3. Finally, Continued argues that even if Lovett adequately alleges disclosure of her PII, she has not alleged that Continued disclosed that information "knowingly" as the VPPA requires. (Doc. 17, #169); *see* 18 U.S.C. § 2710(b)(1) ("A video tape service provider who *knowingly* discloses … shall be liable." (emphasis added)). According to Continued, while Lovett alleges that Continued knowingly disclosed both users' identity and the specific videos viewed, she fails to allege that Continued

"knew" that Meta would be able to combine the two "to identify her as the 'person' who 'requested or obtained specific video materials or services.'" (Doc. 17, #170 (quoting 18 U.S.C. § 2710(a)(3))). So, Continued says, Lovett did not plead that it had a culpable state of mind. (*Id.*).

This argument falls short. To see why, look at the Amended Complaint. There, Lovett alleges that Continued "intentionally installed and programmed the Meta Pixel code on its Websites, *knowing* that such code would transmit that total access to a video service was purchased and later the titles of the specific prerecorded videos requested or obtained using that service, which were *disclosed each alongside the consumers' unique identifiers* (including FIDs and device information)." (Doc. 16, #150–51 (emphases added)). This is sufficient, at the motion to dismiss stage, for the Court to plausibly infer that Continued "knew" that Meta could combine that data to determine who watched what videos. Frankly, the way Lovett alleges it, very little "combining" needed to be done—Continued disclosed the data side by side.

While Continued cites *In re Hulu Privacy Litig. (Hulu II)*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015), to support its position, that case was at a different stage in the litigation. There, a California court dismissed, at summary judgment, a VPPA claim arising out of Hulu's adding a "Facebook Like" button to each hulu.com watch page. *Id.* at 1093. The court dismissed the claim despite plaintiffs pointing to facts that Hulu knew it was sending both Facebook users' identities as well as video title-bearing watch-page addresses. *Id.* at 1098–99. That was because the plaintiffs failed to cite facts "to show Hulu's knowledge that Facebook might *combine* these things to

16

yield PII under the VPPA." *Id.* (emphasis original). It may very well be true that at the summary judgment stage Lovett might similarly fail to point to sufficient facts in the record supporting Continued's knowledge that Meta could, or was, combining the data sent. But as for now, her allegations suffice.

## CONCLUSION

For those reasons, the Court **DENIES** Defendant Continued.com, LLC's Motion to Dismiss (Doc. 17).

**SO ORDERED.**

March 26, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

17