**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **VICTORIA LOVETT, individually and on behalf of all others similarly situated,** | : | **Case No. 1:24-cv-00590** |
| **Plaintiff,** | : | **Judge Douglas R. Cole** |
| **v.** | : | |
| **CONTINUED.COM, LLC,** | : | **OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT** |
| **Defendant.** | : | |

The claims asserted by Plaintiff Victoria Lovett against Defendant Continued.com, LLC ("Continued") suffer from a fatal flaw: Ms. Lovett cannot show any injury (and thus lacks standing). Ms. Lovett never watched a prerecorded video during the relevant period that constitutes a statutory injury. She therefore never suffered a concrete injury.

Ms. Lovett has now filed a Motion for Leave to File Second Amended Class Action Complaint ("Motion for Leave"). That motion should be denied. Because Ms. Lovett lacks standing—and as a result so does the entire action—the Court lacks jurisdiction to consider the Motion for Leave. Likewise, the proposed Second Amended Class Action Complaint ("Proposed SAC") attached to the Motion for Leave fails to assert an injury under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, et seq.

Although Ms. Lovett styles the Motion for Leave as "a routine housekeeping amendment," (Doc. 34, Motion for Leave, PageID 330), that description ignores this case's unusual and problematic posture along with the jurisdictional standing issue. Ms. Lovett contends that the Proposed SAC shores up some technical or surface-level problem without changing this case's structure. Not so. The parties have litigated this case for nearly two years with Ms. Lovett as the

sole purported class representative. Only now that Ms. Lovett's viability as a class representative is in jeopardy do four other putative named class members, Leah Rueda, Angela Kay, Ambros Wendel, and Eric Ulmer ("the Proposed Named Plaintiffs") wish to join this case as named plaintiffs.

Given the time and resources Continued has devoted to litigating the case as initially styled, along with Ms. Lovett's repeated and unsuccessful attempts to cure the deficiencies with her pleading, amendment would prejudice Continued and cause undue delay. If the Proposed SAC became effective, this action would be transformed into a new case with new named class members, new VPPA violations, and potentially even a new time period. At bottom, Ms. Lovett requests far more than the typical amendment freely given under Rule 15. For those reasons, this Court should deny Ms. Lovett's Motion for Leave.

## ARGUMENT

### I. This Suit Lacks Article III Standing and Should Not Proceed in this Court.

Ms. Lovett has asserted, and continues to assert, just one cause of action for the putative class: violations of the VPPA arising from Continued's websites' alleged transmission of her personally identifiable information ("PII") through the Meta Pixel. (Doc. 34-1, Proposed SAC, PageID 383.) But despite tendering a *third* complaint, Ms. Lovett still never explains exactly when and how Continued violated the VPPA or caused her harm. More fundamentally, Continued's records establish that Ms. Lovett never viewed a prerecorded video during the relevant period. Ms. Lovett therefore has not suffered a concrete injury, which is necessary for standing. And because the sole named plaintiff for this action lacks standing, the entire action lacks standing.

On top of that, the Proposed SAC fails to allege injury for the Proposed Named Plaintiffs. Vague and hypothetical allegations about potential violations based on a website's available

offerings fall short of Article III's injury requirements. So the Court should not permit Ms. Lovett to amend her complaint to add the Proposed Named Plaintiffs.

**A. Continued's Records Confirm Ms. Lovett Suffered No Concrete Injury.**

Ms. Lovett cannot seek leave to amend because she cannot show an injury sufficient for standing. The First Amended Complaint ("FAC") and the Proposed SAC identify no specific instance of Ms. Lovett obtaining or viewing a specific prerecorded video in the relevant period. The reason for this glaring omission is that it never happened. Ms. Lovett had two accounts with Continued—a student account (SP-1245047) and a professional account (SP-1595451).[1] (Ex. 1, Fox Decl., ¶ 4.) Ms. Lovett's student account went dormant in April 2020. (*Id.*) So only activity from her professional account could show an injury. Only two actions relating to Ms. Lovett's professional account occurred in the two years before she filed her initial Complaint on October 16, 2024 (Doc. 1): two January 2023 registrations for *live* webinars (not prerecorded) that Ms. Lovett never actually viewed. (*Id.*, Ex. A, p. 2) In any event, those live webinars cannot support a VPPA claim because the statute does not permit claims related to live videos.[2] No activities

---

[1] Federal courts permit introducing evidence at the dismissal stage necessary for determining standing. "A defendant can challenge standing on either facial or factual grounds," and "the court does not presume that the plaintiff's factual allegations are true" for the latter. *Deltro Elec. Ltd. v. Elec. Power Sys. Int'l, Inc.*, No. 1:21-cv-303, 2022 WL 4449002, at *6 (S.D. Ohio Sep. 23, 2022) (quoting *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015)). "Rather, a factual challenge requires a court to test the 'factual predicates' of a plaintiff's standing by way of extraneous evidence." *Id.* Continued raises both a facial and factual challenge to standing, and may thus introduce extrinsic evidence (such as an affidavit) to show lack of factual standing. *See Roberts v. Progressive Preferred Ins. Co.*, No. 1:23 CV 1597, 2024 WL 2295482, at *3 (N.D. Ohio May 21, 2024) (allowing "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts" to resolve a "factual attack") (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A declaration from Continued's Chief Operating Officer, Adam Fox, is attached as Exhibit 1.

[2] *See Christopherson v. Cinema Ent't Cor.*, 161 F.4th 525, 528 (8th Cir. 2025) (distinguishing viewing of a live video, for which a "customer has no control" with prerecorded content covered

involving prerecorded videos associated with Ms. Lovett's account occurred within the VPPA's two-year limitations period. (*Id.*, ¶¶ 6–7.)

The facts relating to Ms. Lovett's viewing history support no injury. A plaintiff who has suffered no injury in fact lacks Article III standing and thus cannot file an amended complaint. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) ("Whereas Zurich American admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest."); *see also Zangara v. Travelers Indem. Co. of Am.*, No. 1:05CV731, 2006 WL 825231, at *1–2 (N.D. Ohio Mar. 30, 2006). Because Ms. Lovett lacked standing to bring the action, this Court lacks jurisdiction to consider her Motion for Leave just as with any other motion filed by a plaintiff lacking standing.

In *Zangara*, plaintiffs sought leave to file a second amended class action complaint which required "substituting three new named plaintiffs for the current named plaintiff." 2006 WL 825231, at *1. There, the named plaintiff had "no claim against a proper defendant," and plaintiffs admitted that the named plaintiff "ha[d] not suffered the injury alleged in the Complaint." *Id.* at *1–2. "Because injury is one element of Article III standing," the plaintiff in *Zangara* "lack[ed] standing to bring [his] lawsuit." *Id.* at *2. As a result, "lack of standing preclude[d] [plaintiff] from amending the complaint to substitute new plaintiffs and join a new defendant. More precisely, his lack of standing divests this Court of subject matter jurisdiction necessary to even consider such a motion." *Id.* at *2.

---

by the VPPA); *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025) (making a live video available does not show a "transaction involving an exchange of materials that qualifies as a 'rental, sale, or delivery'" under the VPPA). In addition, Ms. Lovett's Proposed SAC makes clear that her claims relate to prerecorded video content—she uses the phrase "prerecorded video" 61 times and never mentions any live content. (*See generally* Doc. 34-1, Proposed SAC.) So her claims are not based on accessing live webinars.

*Zangara*'s logic comes directly from the Sixth Circuit's holding in *Zurich Insurance*. In *Zurich Insurance*, the Sixth Circuit affirmed dismissal for lack of standing because a standing issue pre-existed a motion to substitute the real party in interest. 297 F.3d at 531. In other words, a lack of injury (and thus standing) ends a suit regardless of an attempt to add a new party with standing by a later-filed motion. *Id. Zangara* followed that reasoning to deny a motion for leave to amend for lack of jurisdiction when no injury existed for the plaintiff. 2006 WL 825231, at *2 (applying *Zurich Ins. Co.*); *see also Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 800 (N.D. Ohio 2007) ("Recent Sixth Circuit law expressly holds that substitution is improper when the original named plaintiff lacks standing to assert claims.").

Thus, for this litigation to continue, Ms. Lovett—the sole named plaintiff—must show that she suffered an injury under the VPPA. *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 687 (S.D. Ohio 2006) ("[T]he Court must dismiss a case if the named plaintiff does not have standing regardless of whether members of the putative class have suffered injuries."). "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III [standing] just because they allege class claims." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016). "[P]otential class representatives must demonstrate individual standing vis-à-vis the defendant; they cannot acquire such standing merely by virtue of bringing a class action." *Id.* (internal quotations and brackets omitted). And under the "well-established doctrine that to obtain standing, a plaintiff must have a redressable *injury at the time of filing the complaint*," the absence of any cognizable injury during the relevant period confirms that Ms. Lovett lacks standing. *Sesi v. Fed. Nat. Mortg. Ass'n*, No. 10-12966, 2010 WL 8471863, at *3 (E.D. Mich. Sep. 9, 2010) (emphasis added) (citing *Morrison v. Bd. of Educ.*, 521 F.3d 602, 622 (6th Cir. 2008)).

All told, Ms. Lovett's Motion for Leave mirrors the failed motion for leave to amend in *Zangara*. Ms. Lovett's account history leaves no doubt that she viewed no prerecorded videos in the relevant period, so she suffered no injury sufficient to confer Article III standing. Only after Continued raised problems with Ms. Lovett's viewing history did Ms. Lovett try to add the Proposed Named Plaintiffs by filing the Motion for Leave. But her attempt to salvage this case doesn't work. If no standing exists, then this Court should immediately dismiss the case. Under *Zangara*, the Motion for Leave provides no avenue to escape the standing defect for Ms. Lovett (and thus the class for which she is currently the sole named representative).

### B. Ms. Lovett Fails to Assert Claims within the VPPA's Statute of Limitations.

The operative complaint fails to assert allegations showing an injury arising from Ms. Lovett's video viewing history relating to Continued's website. She claims that she purchased a "specific video service from Defendant's website on or about August 15, 2023, which provided her access to unlimited prerecorded videos for a one-year period." (Doc. 16, FAC, PageID 124.) But nowhere does the FAC (or the Proposed SAC) assert any specific prerecorded material actually obtained or viewed by Ms. Lovett within the limitations period. At most, the FAC provides "*an example*" of the prerecorded content allegedly "*available*" on Continued's website. (*Id.*, PageID 136 (emphasis added).) But no allegation states that Ms. Lovett actually watched *that* video, or any other prerecorded materials, obtained from Continued. Instead, the FAC points to a "course library" and lists the number of alleged prerecorded video courses made available by Continued. (*Id.*, PageID 137.) As shown above and confirmed by Continued's records, no such injury exists. (Ex. 1, Fox Decl., ¶¶ 6–7.) The FAC's omission of any specific injury underscores and confirms the lack of injury. In short, Ms. Lovett filed this action in October 2024, (*see* Doc. 1), and the

VPPA requires any injury to have occurred *after* October 2022. No such injury exists or has been alleged relating to Ms. Lovett.

Ms. Lovett tries to avoid her injury problem by contending that Continued's argument confuses standing with defense on the merits. She claims that Continued "incorrectly referred" to standing when Continued stated its initial opposition to amendment on grounds that Ms. Lovett "did not access the prerecorded video materials … during the two-year period preceding the filing of this action." (Doc. 34, Motion for Leave, PageID 333–34.) In a footnote, Ms. Lovett argues that Article III standing is distinct from whether she stated a claim. (*Id.*) But contrary to what Ms. Lovett asserts, Continued does not demand that Ms. Lovett "prove her claim on the merits" before receiving leave to amend. (*Id.*, PageID 334.) Rather, Continued points out that there is no evidence supporting Ms. Lovett actually suffering an injury during the relevant period.[3] Without the possibility of an injury having occurred, no standing, and thus no jurisdiction, exists here.

Ms. Lovett relies on a handful of district court and out-of-circuit cases that do not engage with *Zangara* or *Zurich Insurance*. (*See id.*, PageID 333–34.) In *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 2043527, at *2 (E.D. Mich. Apr. 27, 2020), the court did *not* consider whether a lack of standing prohibits a court from granting leave to amend. Instead, the court reviewed whether an "attempt to amend is done in bad faith" when plaintiff "fails to provide proof of standing." *Id.* There, the court had "*already determined that [plaintiff] ha[d] standing to bring*

---

[3] Continued's argument that no injury exists comes as no surprise to Ms. Lovett. She admits that Continued raised questions about injury and her viewing history during the "last status conference," (Doc. 34, Motion for Leave, PageID 334), which occurred on July 21, 2026. Continued had also raised those issues before the June 16, 2026, status conference. (*See* Doc. 31, Rule 26(f) Report, PageID 314 ("Discovery on Plaintiff's viewing history and social media will provide a basis for finding Ms. Lovett is not a viable class representative.").) For months, Ms. Lovett has had time to gather any evidence that she viewed a prerecorded video during the relevant period. Her failure to present such evidence when seeking leave to amend speaks volumes.

*suit*." *Id.* (emphasis added). Ms. Lovett wrongly suggests that *Lin* supports the proposition that standing issues cannot bar a court from denying leave to amend, and she ignores that the standing issue in *Lin* had already been resolved. (*See* Doc. 34, Motion for Leave, PageID 333–34 n. 1.) *Lin* is therefore inapt because the court had already found standing to exist (the issue in dispute here). Continued has now shown Ms. Lovett lacks standing, which is the opposite scenario from *Lin*.

Next, Ms. Lovett cites *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1139 (9th Cir. 2024) to contend that a court cannot resolve disputed facts about jurisdiction when the "jurisdictional questions are intertwined with the merits of a claim." (Doc. 34, Motion for Leave, PageID 334.) As far as Continued can tell, Ms. Lovett argues that if factual disputes about jurisdiction overlap with the merits, then courts cannot even address the jurisdictional issue. That makes little sense, and does not follow from *Bowen*. In *Bowen*, the Ninth Circuit reviewed whether the district court "erred by failing to construe disputed facts in [plaintiff's] favor and prematurely resolving merits issues." 118 F.4th at 1139. There, the Ninth Circuit had concerns about whether the "summary judgment standard" applied to a standing challenge. *Id.* at 1146. Because "factual disputes remain[ed]" about injury, the Ninth Circuit overturned a grant of dismissal. *Id.* at 1149.

That differs from the scenario here, where Continued is not asking the Court to reach the merits of a contested fact dispute. *Bowen* only applies to a "dispute" of facts about standing—here Ms. Lovett has provided no evidence or offered any additional factual allegations to dispute the fact she lacks an injury. *Id.* at 1143.

Rephrased, *Bowen* addresses the proper standard for resolving *disputes* of fact when the merits and injury are inseparable. That makes sense—a party cannot ask a court to prejudge fact disputes at the dismissal stage and must instead present evidence to the trier of fact. But *Bowen* says nothing about a scenario where plaintiff offers *no* facts supporting standing. As *Bowen* points

out, a plaintiff "has the burden to 'support her jurisdictional allegations with 'competent proof'" to rebut challenges to standing. *Id.* (quoting *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021)). Ms. Lovett has not met, and cannot meet, that burden. Because standing for the putative class rises and falls with Ms. Lovett, the sole named plaintiff, at the pre-certification stage, Ms. Lovett's failure to show injury ends this action and bars amendment. *Key*, 454 F. Supp.2d at 687.

### C. Ms. Lovett and the Proposed Named Plaintiffs Lack Standing for a Statutory Claim under the Proposed SAC.

Even on the face of the Proposed SAC, this suit lacks standing, and leave to amend should be denied because amendment would be futile. "An amendment is futile if it could not withstand a motion to dismiss." *Tippins v. Caruso*, No. 17-1508, 2018 WL 11282023, at *1 (6th Cir. Mar. 21, 2018). Lack of standing, like other grounds for dismissal, renders amendment futile. *Id.* ("The district court did not err in denying the motions to amend because Tippins lacked standing."); *see also Huber v. Adult Parole Auth.*, No. 3:25-cv-232, 2026 WL 492422, at *2 (Feb. 23, 2026) ("Because Huber does not have standing to levy such a claim, her proposed amended complaint is futile."); *Gaylor v. Hamilton Crossing CMBS, LLC*, No. 1:12-cv-86, 2013 WL 12099071, at *2 (E.D. Tenn. Mar. 28, 2013) ("Plaintiff's proposed amendment would be futile, as it too fails to sufficiently establish that Plaintiff has suffered an actual injury traceable to Defendant.").

All parties asserting statutory claims must show Article III standing, including a concrete injury; the mere fact that Congress affords a cause of action is not enough. "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A concrete injury is one that "must actually exist," i.e., an injury that is "real" and "not 'abstract'." *Id.* at 340. Even so, some "intangible injuries can nevertheless be concrete." *Id.* That is why a "bare procedural violation, divorced from any concrete harm" does not support standing. *Id.* "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original).

In *Spokeo*, the United States Supreme Court reasoned no injury (and thus no standing) exists for a procedural violation of the Fair Credit Report Act of 1970 where an employee database contained inaccurate information, so long as the violation "result[ed] in no harm." *Id.* "At its core, *Spokeo* stands for the premise that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Silbaugh v. CenStar Energy Corp.*, No. 1:18 CV 161, 2018 WL 4558409, at *2 (N.D. Ohio Sept. 21, 2018).

When suing for a statutory violation, plaintiffs must do more than allege a conjectural or hypothetical injury. Ms. Lovett, and the Proposed Named Plaintiffs, have not done so in the Proposed SAC. Under the VPPA, a plaintiff must show an injury arising from PII disseminated by a "video service provider," which is "any person engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Just using a website with the Meta Pixel installed, especially one which offers educational content in a variety of modalities rather than merely a library of prerecorded videos, is not enough to show that a plaintiff is a "consumer" of a "video tape service provider" under the

VPPA; a plaintiff must allege that he or she viewed prerecorded video content. *Salazar v. Paramount Glob.*, 133 F.4th 642, 651 (6th Cir. 2025) ("a person is a 'consumer' only when he subscribes to 'goods or services' in the nature of 'video cassette tapes or similar audio visual materials.'") (quoting 18 U.S.C. § 2710(a)(1), (a)(4).)

To be sure, many courts have found that some VPPA claims *can* survive under *Spokeo*. *See e.g., Salazar*, 133 F.4th at 647.[4] But that does not excuse plaintiffs asserting VPPA claims from satisfying all the *Spokeo* requirements for Article III standing. The entire Proposed SAC rests on hypotheticals about *possible* video viewing and *hypothetical* social media profiles. These generalized claims are insufficient to support a plausible cause of action. *See, e.g., Spokeo*, 578 U.S. at 338 n.6 ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (internal quotation marks omitted); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 285 (3d Cir. 2016) ("[W]e think that legislators' initial focus on both libraries and video stores indicates that the [VPPA] was meant to prevent disclosures of information capable of identifying an *actual person's* reading or video-watching habits.").

Here, Ms. Lovett and the Proposed Named Plaintiffs do not specify what prerecorded video viewing led to any individual's harm. That is a problem under *Spokeo*: there is no standing for mere conjecture about how an injury arose or who was injured. *See, e.g., Johnson v. DeWine*, No.

---

[4] True, many courts and commentators have found that the VPPA has a "'historical corollary' to the violations of the right to privacy, which 'have long been actionable at common law.'" *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 677 (E.D. Mich. 2022) (quoting Jackson Erpenbach, Note, *A Post-*Spokeo *Taxonomy of Intangible Harms*, 118 Mich. L. Rev. 471, 484–85 (2019) and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). Continued does not challenge that authority. Yet a common-law analogy is a necessary condition, not a sufficient condition, for standing under *Spokeo*. There must also be allegations as to someone's actual injury, which are absent from the Proposed SAC.

1:22-cv-587, 2023 WL 6421286, at *2 (S.D. Ohio Oct. 3, 2023) ("With no factual allegations about Defendants' communication or other conduct, Johnson's injury is, at best, 'conjectural or hypothetical.' … After all, if Johnson does not allege Defendants did anything specific, how can he argue that they caused his unemployment (assuming that is his claimed injury)?"). And nothing in *Salazar* addressed whether the injury was pled with sufficient detail to go beyond speculative or hypothetical harm. Unlike the Proposed Named Plaintiffs here, the *Salazar* plaintiff alleged accessing a specific newsletter that resulted in plaintiff's PII being disclosed to a specific third party. 133 F.4th 647. Those missing allegations doom the Proposed SAC. When a proposed amendment lacks "facts to suggest" that "injuries actually occurred," it cannot "survive a motion to dismiss." *Patterson v. UnitedHealthCare Ins. Co.*, 76 F.4th 487, 500 (6th Cir. 2023) (affirming denial of leave to amend because the "proposed amendment was futile").

The Proposed SAC broadly alleges that (1) certain individuals "purchased a specific video service from Defendant's website" that provided "access to unlimited prerecorded videos for a one-year period." (Doc. 34-1, Proposed SAC, PageID 352, 354, 356, 357–59); (2) certain individuals used "Defendant's website to request and obtain pre-recorded videos from Defendant" (*Id.*, PageID 353, 354, 356, 358–59); (3) certain individuals had "a Meta account, a Meta profile, and an FID associated" with their Continued website profile (*Id.*, PageID 353, 355, 356, 358, 360); and (4) Continued "disclosed to Meta [the] FID, the URL identifying the specific video service [] purchased, and the title of the specific videos [] requested or obtained." (*Id.*, PageID 353, 355, 356–58, 360.) But the Proposed SAC offers few details about Continued's websites—it provides only *examples* of available video content and the mere fact that Continued makes a video library available online. (*Id.*, PageID 370, 371–72.) None of that amounts to a concrete injury for a specific

person. In other words, there is an "absence of facts" showing that "injuries actually occurred." *Patterson*, 76 F.4th at 500. Such absence of a specific injury is fatal.

Simply put, the Proposed SAC only alleges that Continued makes certain video services available to users. It offers no details about how any specific individual used the website, what specific videos were watched, what specific information was transmitted, or when any of the relevant conduct occurred. All the Proposed SAC asserts is that Continued makes certain content available online, and that certain individuals had access to that material over a year or two-year term. And it alleges, without explanation, that some unspecified conduct related to prerecorded videos resulted in Meta receiving information about certain individuals. Simply having a website and offerings that *could* violate the VPPA is not enough. A "lawsuit may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *TransUnion*, 594 U.S. at 427–28 (quoting *Spokeo*, 578 U.S. at 345 (Thomas, J., concurring).) Exactly so here: the Proposed SAC at best describes circumstances violating the VPPA without showing any plaintiff's specific or concrete injury.

The Proposed SAC leaves much to the imagination about who was injured and how; none of the specifics required for Article III standing are present. *See Ross v. City of Gatlinburg*, 327 F. Supp. 2d 834, 842 (E.D. Tenn. 2003) (finding lack of standing because plaintiffs failed to "specify any particular street, sidewalk, intersection, parking lot, public building or facility that does not comply with the ADA"). As in *Ross*, the Proposed SAC fails to specify any particular video that led to a VPPA violation, any specific conduct for any individual, or any specific information shared

with Meta. The mere possibility that sensitive information may be shared with a third party is speculative, and the potential that such information will be disseminated does not establish an Article III injury. *Clapper v. Amnesty Int'l, U.S.A.*, 568 U.S. 398, 410–11 (2013). Such a possibility is all the Proposed SAC sets forth.

For those reasons, Ms. Lovett and the Proposed Named Plaintiffs do not meet their burden "to 'clearly allege facts demonstrating' a 'plausible claim' that [they] ha[ve] standing." *Mackinac Ctr. for Pub. Pol. v. U.S. Dep't of Ed.*, 175 F.4th 692, 700 (6th Cir. 2026) (quoting *Spokeo*, 578 U.S. at 338). The Proposed SAC should be rejected as futile.

**D. Adding the Proposed Named Plaintiffs Violates the Relation-Back Doctrine.**

Before class certification, a plaintiff cannot expand the limitations period for a class action suit by substituting in new purported named class members. For an amendment to relate back to a previous complaint, FRCP 15(c)(1)(B) requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." And Rule 15(c)(1)(C) states that the amendment must "change[] the party or the naming of the party against whom a claim is asserted." By its terms, FRCP 15(c) contemplates pleading back for changes to defendants and not the addition of new plaintiffs. Here, the Proposed Named Plaintiffs' allegations were neither set out in the original pleading, nor change the defendant.

This Court has held that Rule 15(c) does not permit an amended complaint to relate back when it seeks to add claims from previously unnamed putative class members. *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 801 (S.D. Ohio 2007) ("The Federal Rules of Civil Procedure do not support a determination that unnamed putative class members properly substituted would relate back to the original filing of the complaint."). In *Barnes*, the defendant raised "serious

concerns that named plaintiffs may not have standing" to pursue claims under the operative complaint. *Id.* The court rejected a request for leave to add new named class members because "the proposed new Plaintiffs' claims do not relate back to the original complaint and must be defined as new parties and new claims." *Id.* Citing the substantive differences between the current named plaintiff and proposed named plaintiff, such as the "different dates and times" for the relevant conduct, the court denied the motion to amend. *Id.* At bottom, "the requirements of Rule 15(c) are not met" for claims raised by new proposed plaintiffs seeking to overcome a viable defense precluding a class action. *Id.* (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)). So the Proposed Named Plaintiffs cannot extend their limitations period by relying on Ms. Lovett's action filed almost two years ago. Because the Proposed Named Plaintiffs' claims do not relate back to Ms. Lovett's October 16, 2024 filing of the initial Complaint, their limitations period cannot be measured from that date.

As with the proposed named plaintiffs in *Barnes*, adding the Proposed Named Plaintiffs would not be done "to correct a mistake" but instead to address a substantive flaw in this case.[5] *Id.* Ms. Lovett seeks to add the Proposed Named Plaintiffs to include new violations of the VPPA to this action in hopes of overcoming a fatal standing problem raised by Continued. Under *Barnes*, such amendment is improper. What's more, the Proposed Named Plaintiffs watched videos many years later than did Ms. Lovett. (*See* Doc. 34-1, Proposed SAC, PageID 352–60.) And they seek

[5] Ms. Lovett makes much of Continued's "counsel [having] said nothing to Plaintiff's counsel to dispute the viability" of the Proposed Named Plaintiffs' "claims for relief." (Doc. 34, Motion for Leave, PageID 339.) Yet Continued had no obligation to communicate its concerns about the Proposed Named Plaintiffs' ability to state a claim. Silence from Continued "in the weeks since Plaintiffs' counsel provided Defendant's counsel a copy of the Proposed SAC" has no consequence on whether the Motion for Leave is futile or can otherwise succeed. (*Id.*, PageID 338.)

to join the case two years after Ms. Lovett initiated this lawsuit, with some of their alleged VPPA violations occurring *after the initial complaint had been filed.* (*See, e.g.*, *id.*, PageID 354 ("Plaintiff Rueda … last purchased a specific video service from Defendant's website on or about January 28, 2026.")) Amending here would alter the scope of this suit by adding the Proposed Named Plaintiffs. Just as in *Barnes*, the "claims presented by the [Proposed Named Plaintiffs] in their proposed Second Amended Complaint involve claims of new parties," which is improper under the Federal Rules of Civil Procedure. 473 F. Supp. 2d at 802. This Court should reach the same conclusion and deny Ms. Lovett's Motion for Leave.

### II. Litigating under the Proposed SAC Would Cause Undue Delay and Prejudice to Continued.

The Motion for Leave also falls short on delay and prejudice grounds. Courts deny leave to amend for "undue delay" and "prejudice to the opposing party."[6] *Grant v. Target Corp.*, 281 F.R.D. 299, 302 (S.D. Ohio 2012). Because "delay alone, regardless of its length is not enough to bar amendment if the other party is not prejudiced," courts often consider the length and reasons for delay together when denying leave to amend. *Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1989) (quoting 3 Moore's Federal Practice, ¶ 15.08 at 15.76). "The longer the period of unexplained delay, the lesser the burden of demonstrating prejudice." *Satterfield v. Franklin Cnty. Sheriff*, No. 2:09 CV 387, 2009 WL 3031180, at *2 (S.D. Ohio Sept. 17, 2009). "In short, the case law creates a sort of 'delay-plus' framework." *Abner v. Convergys Corp.*, No. 1:18-cv-442, 2021 WL 9056617, at *2 (S.D. Ohio Apr. 7, 2021).

[6] To be clear, Continued raises prejudice and undue delay in the alternative. Because no standing exists, this Court need not reach the delay and prejudice analysis.

This case has been pending for over two years, and the court has resolved two motions to dismiss. That amount of time and litigation is enough length to show undue delay. *See Cooper v. Bower*, No. 5:15-CV-249, 2018 WL 663002, at *3 (W.D. Ky. Jan. 29, 2018) ("The Court finds that the delay of roughly two years from the commencement of this lawsuit until the time Plaintiff has again sought to amend his Complaint constitutes "undue delay" under the circumstances.").

So what is the "plus" here? Federal courts recognize prejudice when amendment would impose "additional litigation costs … that could have easily been avoided" had plaintiff included allegations or claims in "its original complaint or reply." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). If facts or theories are known to a plaintiff when she filed the original complaint and were excluded from the complaint, it is prejudicial to force defendants to defend against such allegations or claims. *Battaglia v. United States*, No. 1:08CV778, 2010 WL 11561587, at *2 (N.D. Ohio Sep. 13, 2010) (denying leave to amend because, among other things, "the case is three years old and, as the Defendant correctly points out, the facts demonstrating a claim for battery under Ohio law were known to Plaintiff from the outset."); *Peiffer v. Merchants & Med. Credit Corp. Inc.*, No. 20-13171, 2021 WL 4228637, at *1 (E.D. Mich. July 19, 2021) ("As argued by Defendant, no new information was uncovered that would prompt the need for amendment but rather, the amendment is 'based on information that has been known to Plaintiff all along.' Therefore, the timing of the proposed amendment favors denial of the motion."). District courts disfavor amendments that "surprise" a defendant with "a new matter." *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 834 (W.D. Tenn. 2010).

At any time, Ms. Lovett could have asked to amend her complaint to add additional named plaintiffs. But she waited almost two years and after much litigation to seek leave to add the Proposed Named Plaintiffs. And she only does so after recently realizing her VPPA claims are

defective.[7] If Ms. Lovett wanted this to be a class action with multiple named plaintiffs, she should have made that choice before litigating two dispositive motions and allowing this case to proceed for two years. As in *Battaglia* and *Peiffer*, amendment is improper when a party seeks to add allegations that were always available to a plaintiff (i.e., that other named class members suffered a VPPA violation). Despite spending much time and resources litigating a case with the claims and class members that Ms. Lovett chose to identify, Continued now faces the prospect of starting at square one. On top of that, adding the Proposed Named Plaintiffs might extend the time period here, as their alleged injuries occurred years after Ms. Lovett's alleged injury. In brief, Ms. Lovett seeks to amend because she no longer wants to litigate the case she filed.

Ms. Lovett spills much ink about Continued's prejudice without addressing those issues. (*See* Doc. 34, Motion for Leave, PageID 335–345.) She instead resists prejudice by arguing that she has not: (1) violated the case schedule; (2) imposed more than "a modest amount of time and expense" in terms of additional discovery; (3) acted with bad faith or dilatory motive; and (4) acted failed to act "promptly" after Continued raised concerns about the viability of Ms. Lovett's claims. (*Id.*) Yet Ms. Lovett ignores the *years* of litigation and many pages of briefing submitted to the Court required to address deficiencies in her first two complaints. In fact, she discounts that entire period by suggesting the "two months after Defendant filed its Answer" is the only amount of time

---

[7] Ms. Lovett essentially admits this in the first sentence of her Motion for Leave. She opens by stating Continued "has questioned Plaintiff Lovett's entitlement to relief …, suggesting that she did not access the prerecorded video materials she purchased from [Continued] during the two-year period preceding the filing of the action." (Doc. 34, Motion for Leave, PageID 329.) Although Ms. Lovett claims to "dispute" that shortcoming (*id.*), without offering any facts to do so, the context and timing here confirm that Ms. Lovett recognizing the injury defect triggered her efforts to reconfigure her lawsuit.

that counts as a "delay." (*Id.*, PageID 345.) And she never engages with the prejudice arising from a proposed amendment to add issues or parties that could have been part of the case all along.

Ms. Lovett's commentary on prejudice misses the mark. Ms. Lovett, as plaintiff, was the master of her complaint, and required Continued to defend against this action for nearly two years. *See Scalzo on behalf of Cutting Edge Formulations, Inc. v. Jankauskas*, No. 1:18-cv-4571, 2021 WL 4242362, at *4 (N.D. Ga. Jan. 8, 2021) (observing "plaintiff is generally the master of his complaint—as a corollary, he is also the owner of its faults" when denying motion leave to amend). She then only changed course when serious problems for her case emerged. Continued should not be forced to start over with a *third* complaint with four newly named plaintiffs who viewed materials on Continued's website *years* after Ms. Lovett. Doing so would be prejudicial, especially considering that Ms. Lovett could have added named class members besides herself from the beginning. The case against the Proposed Named Plaintiffs differs greatly from the case Continued has defended against for almost two years, and changing course would needlessly rewind the litigation clock and prejudice Continued.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's Motion for Leave.

Respectfully submitted,

*/s/ Beth A. Bryan*
Beth A. Bryan (0082076)
William E. Braff (0098773)
TAFT STETTINIUS & HOLLISTER LLP
301 E. 4th Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 357-9617
bryan@taftlaw.com
bbraff@taftlaw.com

*Counsel for Defendant Continued.com, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above was filed electronically on August 18, 2026. Notice of this filing will be sent to all parties through the Court's electronic filing system.

*/s/ Beth A. Bryan*